UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>             Plaintiff,<br><br>      v.<br><br>HEALTH RESOURCES AND SERVICES<br>ADMINISTRATION, et al.,<br><br>             Defendants. | Civil Action No. 24-0549 (JMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

BACKGROUND .................................................................................................. 1

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ....................................................................................................... 6

     I.      The Agency Properly Withheld the Names Pursuant to Exemption 6................... 6

     II.     The Agency Produced All Reasonably Segregable, Non-Exempt Information ... 17

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*Allen v. U.S. Secret Serv.*,
   335 F. Supp. 2d 95 (D.D.C. 2004) ........................................................................ 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 4, 5

*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993) ........................................................................... 14

*Benjamin v. Dep't of State*,
   178 F. Supp. 3d 1 (D.D.C. 2016) ......................................................................... 5

*Carlborg v. Dep't of Navy*,
   Civ. A. No. 18-1881 (DLF), 2020 WL 4583270 (D.D.C. Aug. 10, 2020) ..................... 13-14

*Carter v. Dep't of Com.*,
   830 F.2d 388 (D.C. Cir. 1987) ............................................................................. 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................... 4

*Chelmowski v. United States*,
   Civ. A. No. 17-1394, 2021 WL 3077558 (D.D.C. July 21, 2021) ................................ 16-17

*Citizens for Resp. & Ethics in Wash. V. Dep't of Lab.*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ....................................................................... 5

*Common Cause v. Nuclear Regul. Comm'n*,
   674 F.2d 921 (D.C. Cir. 1982) ............................................................................. 13

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
   554 F.3d 1046 (D.C. Cir. 2009) ........................................................................... 7

*Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*,
   Civ. A. No. 23-5224, 2024 WL 226234 (D.C. Cir. May 15, 2024) ........................... 4

*Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*,
   685 F. Supp. 3d 8 (D.D.C. 2023) ...................................................................... 4, 15-16

*Dep't of Def. v. Fed. Lab. Rels. Auth.*,
   510 U.S. 487 (1994) ........................................................................................... 7

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
   489 U.S. 749 (1989) ........................................................................................... 7-8

*Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ........................................................................................... 6

*Evans v. Fed. Bureau of Prisons*,
   951 F.3d 578 (D.C. Cir. 2020) ............................................................ 17

*Horowitz v. Peace Corps*,
   428 F.3d 271 (D.C. Cir. 2005) ............................................................. 7

*Flyers Rts. Educ. Fund v. FAA*,
   71 F.4th 1058 (D.C. Cir 2023) ....................................................... 17, 18

*Gallant v. Nat'l Lab. Rels. Bd.*,
   26 F.3d 168 (D.C. Cir. 1994) ............................................................. 13

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) ......................................................................... 6

*Humane Soc'y of the U.S. v. Animal & Plant Health Inspection Serv.*,
   386 F. Supp. 3d 34 (D.D.C. 2019) ........................................................ 8

*Inst. for Energy Research v. FERC*,
   Civ. A. No. 22-2114, 2023 U.S. Dist. LEXIS 165849 (D.D.C. Sept. 19, 2023) .................. 12

*Jud. Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ............................................... 6-12, 14-15

*Kendrick v. FBI*,
   Civ. A. No. 20-2900 (TNM), 2022 WL 4534627 (D.D.C. Sept. 28, 2022) .......................... 17

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) .............................................................. 7

*Lesar v. Dep't of Just.*,
   636 F.2d 472 (D.C. Cir. 1980) ............................................................. 8

*Markowicz v. Johnson*,
   206 F. Supp. 3d 158 (D.D.C. 2016) ........................................................ 2

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ........................................................... 5

*Media Res. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ....................................................... 5

*Multi AG Media LLC v. Dep't of Agric.*,
   515 F.3d 1224 (D.C. Cir. 2008) ........................................................... 7

*Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*,
   844 F.3d 246 (D.C. Cir. 2016) ........................................................... 17

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989) ............................................................ 7

*Niskanen Ctr. v. Fed. Energy Reg. Comm'n*,
  20 F.4th 787 (D.C. Cir. 2021) ........................................................................ 7

*Nova Oculus Partners, LLC v. SEC*,
  486 F. Supp. 3d 280 (D.D.C. 2020) ............................................................. 13

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ........................................................................ 6

*Reed v. Nat'l Lab. Rels. Bd.*,
  927 F.2d 1249 (D.C. Cir. 1991) ...................................................................... 6

*Rosenberg v. Dep't of Def.*,
  342 F. Supp. 3d 62 (D.D.C. 2018) ............................................................... 17

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ................................................................... 5-6

*Santana v. Dep't of Just.*,
  828 F. Supp. 2d 204 (D.D.C. 2011) ............................................................... 5

*Schrecker v. Dep't of Just.*,
  349 F.3d 657 (D.C. Cir. 2003) .................................................................. 8, 15

*Weisberg v. Dep't of Just.*,
  627 F.2d 365 (D.C. Cir. 1980) ....................................................................... 5

*WP Co. LLC v. SBA*,
  575 F. Supp. 3d 114 (D.D.C. 2021) ............................................................. 16

## Other

42 C.F.R. § 110.10 ............................................................................................. 2

42 C.F.R. §§ 110.40-45 ..................................................................................... 2

42 U.S.C. § 247d-6e .......................................................................................... 2

5 U.S.C. § 552 .......................................................................... 1, 3, 13, 15, 17

5 U.S.C. § 556 ................................................................................................... 6

85 Fed. Reg. 15,198 .......................................................................................... 2

Federal Rule of Civil Procedure 7 .............................................................. 1, 2

Federal Rule of Civil Procedure 56 ............................................................. 1, 4

Defendants the Health Resources and Services Administration (the "Agency") and the Department of Health and Human Services (collectively, "Defendants"), by and through undersigned counsel, respectfully file this memorandum of points and authorities in support of their motion for summary judgment. Plaintiff Informed Consent Action Network brought this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, litigation against Defendants. The Agency has met its obligations under FOIA and withheld only information that is properly exempt from release under Exemption 6. As explained herein, in the attached Statement of Facts, and in the Declarations of FOIA Officer Brian May and Captain George Reed Grimes, Defendants are entitled to judgment as a matter of law.

## BACKGROUND

Defendants respectfully refer the Court to the accompanying Statement of Material Facts Not in Genuine Dispute for a complete statement of the factual background of this matter. On December 12, 2023, Plaintiff submitted a FOIA request to the Agency seeking "All records sufficient to identify all agency personnel involved with the Countermeasures Injury Compensation Program." *See* May Decl. ¶ 5, Ex. 1. On December 15, 2023, the Agency sent Plaintiff an acknowledgment letter and assigned the request FOIA request number 12122024F109. *Id.* at ¶ 6.

The Countermeasures Injury Compensation Program ("the Program") is administered by the Division of Injury Compensation Programs, Health Systems Bureau of the Agency. *See* Grimes Decl. ¶ 4, Ex. 2. The Public Readiness and Emergency Preparedness ("PREP") Act authorizes an administrative, no-fault compensation program to compensate (i) certain individuals or estates of individuals who sustain serious physical injuries and (ii) certain survivors of individuals who die, when such injuries or deaths are directly caused by the administration or use of covered countermeasures identified in and administered or used under a PREP Act declaration. *Id.* ¶ 6; *see*

*also* 42 U.S.C. § 247d-6e(a); 42 C.F.R. § 110.10(a). HHS administers this authority through the Program. Grimes Decl. ¶ 6 "In 2020, the Secretary of HHS issued a PREP Act declaration for medical countermeasures against COVID-19, which includes COVID-19 vaccines that meet the criteria in the PREP Act declaration."[1] *Id.* ¶ 7; *see also Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 Fed. Reg. 15,198 (March 17, 2020); https://injurycompensation.hrsa.gov/DICPSubmit/Interface/Common/About. "A claim is eligible for compensation only when there is 'compelling, reliable, valid, medical and scientific evidence' that the covered countermeasure directly caused a serious physical injury or death." Grimes Decl. ¶ 8; s*ee also* 42 U.S.C. § 247d-6e(b)(4).

Upon submission of a completed Request for Benefits form and required documentation, such as medical records, the Program's administrative staff reviews "incoming Request Packages to confirm that all expected documentation is received, and that the requester met the statutory one-year filing deadline." Grimes Decl. ¶ 9; *see also* 42 C.F.R. §§ 110.40-45. The Program's administrative staff also communicates with requesters regarding their claims. Grimes Decl. ¶ 9. The Program's medical review staff reviews the submitted documents and "evaluate whether there is compelling, reliable, valid, medical, and scientific evidence that a covered countermeasure directly caused a serious injury or death." *Id.* ¶ 10; *see also* 42 U.S.C. § 247d-6e(b)(4). However, only the Director of the Division of Injury Compensation Programs is delegated authority to make eligibility determinations. *Id.*

---

[1]    The Court may take judicial notice of information posted on official public websites of government agencies. *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))).

Plaintiff seeks the names of the individuals involved in the Program. *See generally* Compl. On December 27, 2023, the Agency sent Plaintiff a final determination letter explaining that it searched[2] for records responsive to its FOIA request and located one page. *See* May Decl. ¶ 14. The Agency produced the page partially redacted and explained that it withheld portions under Exemption 6, including the names of the individuals. *Id.* On January 6, 2024, Plaintiff filed an appeal of the final determination. *Id.* ¶ 15. On February 27, 2024, Plaintiff filed the Complaint in this action, seeking to compel the Agency's compliance with FOIA. *Id.* ¶ 16.

On April 17, 2024, the parties met and conferred regarding Plaintiff's questions about the partial withholdings. Counsel for Defendants explained to Plaintiff's counsel why the Agency withheld the redacted information: the Countermeasures Injury Compensation Program's staff have been subjected to harassment, abuse, and invasions of personal privacy. To protect the safety and wellbeing of the staff, and to avoid physical danger and a potential tragedy, the names of staff members below the Deputy Director-level were withheld. Unsatisfied with that explanation, Plaintiff still wishes to challenge the withheld information.

The only issue before the Court is whether the Agency appropriately withheld one piece of information under FOIA Exemption 6: the names of federal employees who have been and would likely be subjected to harassment, invasions of personal privacy, and abusive language. The Agency properly withheld that information under Exemption 6. The privacy interest of the individuals who would likely be subjected to harassment, invasions of personal privacy, and possible physical danger if their identities were disclosed far outweighs the public interest in identifying the individuals. 5 U.S.C. § 552(b)(6). The only relevant public interest under

---

[2]   Plaintiff has represented it is not challenging the adequacy and reasonableness of the Agency's search.

Exemption 6 is whether the disclosure would reveal something about the workings of the Government; and here Plaintiff does not seek disclosure about how the applications are processed, how the Program is administered, or how determinations are made, etc. Instead, Plaintiff wants Defendants to disclose the names of the employees who are involved in the Program, which is outside of the public interest scope of FOIA and, indeed, the disclosure of which would likely result in continued harassment, intimidation, abuse, and threats to safety. Such risks are palpable and, as shown in the attached email and text message exhibits, such harassment and abuse has occurred to the Program staff members in the recent past.

As Judge Howell recently held in a case where a FOIA requester sought similar identifying information of National Institute of Health employees involved in fetal tissue research, the names must be protected. *Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, 685 F. Supp. 3d 8, 19 (D.D.C. 2023).[3] Accordingly, the Court should grant Defendants' Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[3]    After the government was granted summary judgment, the plaintiff filed an appeal. On appeal, the government moved to voluntarily remand the case because of inaccuracies in the government's declarations and briefing on which the district court relied in upholding certain withholdings. The D.C. Circuit vacated and remanded the case for further proceedings. *See Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 23-5224, 2024 WL 226234 (D.C. Cir. May 15, 2024). The reasoning in Judge Howell's decision, however, remains applicable to this case.

Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016). A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g.*, *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g.*, *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Just.*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. V. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Res. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Upon determining that an agency has released all non-exempt material, the Court has no further judicial function to perform, and the claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

A court must give FOIA's exemptions "a fair reading," given that these exemptions serve "important interests" and "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up). As explained below, the Agency properly withheld portions of records, exempt from disclosure under Exemption 6, the disclosure of which foreseeably would cause harm to the interests the exemption protects.

## I.   <u>The Agency Properly Withheld the Names Pursuant to Exemption 6</u>

The Agency properly relied on Exemption 6 to withhold the names of federal employees involved in the Program. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 556(b)(6). Exemption 6 thus "protect[s] individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). Courts "construe the phrase 'similar files' broadly," and apply Exemption 6 "to any Government records on an individual which can be identified as applying to that individual." *Reed v. Nat'l Lab. Rels. Bd.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (internal quotation marks omitted). Exemption 6 exempts "not just files, but also bits of personal information, such as names and addresses, the release of which could 'create[] a palpable threat to privacy.'" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987)). Here, it is indisputable that the names of the Program employees are "bits of personal information" that are eligible for protection under Exemption 6.

6

Next, to determine whether the Agency properly withheld the identity of the Program employees, the Court "must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of public scrutiny')." *Jud. Watch*, 449 F.3d at 153 (internal quotation marks omitted). In undertaking this balancing test, the Court first determines whether disclosure of the Program employees' names "would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). "The threshold requirement of a substantial privacy interest 'is not very demanding.'" *Niskanen Ctr. v. Fed. Energy Reg. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008)). "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). Any personal privacy interest greater than de minimis is "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

If a more than *de minimis* privacy interest is at stake, then the Court must "weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Horner*, 879 F.2d at 874. Not all public interests are relevant to the Exemption 6 balancing test. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)); *see also Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773

(1989) (holding that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA). The balancing inquiry is further informed by considering the withheld information's "incremental value" to shedding light on agency action. *See Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003).

A.      **The Employees Have a Substantial Privacy Interest.**

Defendants have satisfied the threshold step of establishing that disclosure of the employees' names would compromise a more than *de minimis* privacy interest, and indeed, would compromise a substantial privacy interest that far outweighs the minimal public interest in release of the personal information. Individuals have "the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives." *Lesar v. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980). "The D.C. Circuit 'has been particularly concerned when the information may be used for solicitation purposes' or 'invite[] unwanted intrusions,'" *Humane Soc'y of the U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 45 (D.D.C. 2019) (quoting *Lepelletier*, 164 F.3d at 47). There is a substantial privacy interest in personal information that could subject individuals to "injury and embarrassment"; an individual's privacy interest in "avoiding physical danger" places the Agency in a "strong position" for withholding identifying information. *Jud. Watch*, 449 F.3d at 153.

Here, each of the challenged redactions of names has been applied to employees associated with the Countermeasures Injury Compensation Program. May Decl. ¶ 17. The Agency and other agencies rightfully withhold names of agency staff involved in sensitive and "controversial" programs to protect "the safety and well-being" of staff. *Id.* ¶ 18. There can be no dispute that there has been much discussion and differing opinions about COVID-19 vaccines as well as the related

compensation program. Program staff have been subjected to emails, text messages, phone calls, and voicemails that are harassing, abusive, and in some instances, suggestive of violence. For instance, one email sent to the general Program email inbox had a subject line stating, "I started having seizures 20 minutes after receiving the biotech vaccine." The body of the email said: "And I just found out that I have absolutely no legal recourse because of your commie bull[expletive] and your forced approval of a known dangerous drug. [EXPLETIVE] YOU SO [EXPLETIVE] MUCH DEATH TO AMERICA". Grimes Decl. ¶ 11. Another email to the general Program inbox with the subject line "nazi scum" included text saying: "GO [EXPLETIVE] YOUR SELF LEFTIST PROPAGANDA FREAK." *Id.*

Captain George Reed Grimes, MD, MPH, the Director of the Division of Injury Compensation Programs has received harassing emails, text messages, and voicemails, and as experienced direct invasions of his personal privacy. *Id.* ¶¶ 1, 13-14. The emails he has received were also sent to two other Program staff members. *Id.* ¶¶ 14, 16. Captain Grimes, as well as the other staff members on the emails, have received harassing emails stating that "Hitler had the same mindset" as them, that they are "cowards," that they "lie and cover [their expletive]," that "God is watching," that they are "useless DNA," that they "suck the life out of people," references to explicit sexual acts, and that "Human life means nothing!" *Id.* ¶ 14. They also received an email with "Hahahaha" in the subject line and an attachment of a picture of a staff member and their spouse at a private function. *Id.* ¶ 18. In another email, Captain Grimes and the staff members received an email with an image attached that said, "Sometimes you have to stay silent because no words can explain what is going on in your mind and your heart." The text of the body of the email said "Not in this case. You inconsiderate fools need to do your jobs. I sometimes wonder how you could act if this was your loved ones. Not really, you already lie to protect yourself." *Id.* ¶ 14.

Another email included an attachment of an image that said, "Some people were not put here to evolve. They are here to remind you what it looks like if you don't." The body of the actual email said "So true. You are all an embarrassment. [Explicit] and do your job!" *Id.* And the harassment is not limited to email correspondence. Harassing voicemails have been left on government phones that berate government employees and reference sexually explicit acts. *Id.* ¶ 12.

Captain Grimes has also received communication that invades his, and his families, personal privacy. For example, Captain Grimes received in email in which he was asked why his wife did not opt to take his last name. *Id.* ¶ 13. He also received phone calls, voicemails, and text messages sent to his personal cellphone number. *Id.* In one of the text messages, the sender told Captain Grimes "You can't ignore me." *Id.* Additionally, Captain Grimes' wife has received similar harassing messages on her personal cell phone. *Id.* ¶ 15.

Captain Grimes is not the only Program staff member who has been subjected to the harassing and abusive communications and invasions of privacy. On several occasions one Program staff member "was subject to verbally abusive language and was compelled to terminate phone calls." *Id.* ¶ 17. The same staff member also "received abusive, threatening, and harassing emails" as well as "an email with an attached picture of them and their spouse together at a private function." *Id.* ¶ 18. On one occasion, the staff member included contact information for Captain Grimes and another staff member in an Out of Office message. *Id.* ¶ 19. A requester used that information "to initiate harassing emails" to Captain Grimes and the other staff member. *Id.*

Unfortunately, the abusive and concerning communications did not stop there. On at least two occasions, the email communications rose to such a level that Captain Grimes and a staff member "perceived them as threatening harm" to the staff member. *Id.* ¶ 20. One the first occasion, the staff member received an email containing derogatory language directed at them, while linking

to an article written about the staff member at their prior place of employment. *Id.* "This email communication indicated that a requester was looking into the history of" the staff member. *Id.* One the second occasion, the staff member received an email that included a screenshot of an article written about a school shooting at the staff member's prior place of education. *Id.* Captain Grimes and the staff member perceived the message "as the requester celebrating a school shooting at" the staff member's alma mater. *Id.*

As a result of the abusive, harassing, and alarming messages, Captain Grimes reported the harassing and abusive communications to a local police department and to the Department of Homeland Security's Federal Protective Services. *Id.* ¶¶ 20, 22. Captain Grimes was informed by law enforcement that law enforcement officials "arranged visits to a requester to ensure that the harassment and threatening nature of these communications ceased." *Id.* ¶ 23. The Special Agent from Federal Protective Services overseeing the case informed Captain Grimes that local authorities were considering charging the requester with a crime. *Id.*

"As a consequence of the incidents described above, the supervisory chain for the Health Systems Bureau and HRSA's staff was notified, who subsequently consulted with HRSA's Division of Security Services." *Id.* ¶ 21. "As a result, Federal Protective Services offices responsible for the geographic areas where [Captain Grimes and the two staff members] reside were notified of the threats and harassment." *Id.* The Program "subsequently implemented safeguards to prevent disclosure of information that would externally identify individual roles within the relevant Program, and thus address safety concerns." *Id.* ¶ 24. "These safeguards include informing staff of the safety concerns and recommending they remove mention of specific programmatic roles/employment on social media pages, removing names from CICP documentation when not necessary, and disseminating instructions to staff on how to post safe Out

11

of Office messages." *Id.* Revealing the names of Program staff members would wholly undo the steps the Program has taken to protect its employees.

Additionally, "the menacing nature of the communications led [Captain Grimes] to take action for proactive personal protection." *Id.* ¶ 25. "As a direct result of the personal harassment" and "the invasion of [his] personal privacy," Captain Grimes purchased an alarm system for his home. *Id.* Additionally, it impacted the timing of his decision to get a dog to contribute to home security. *Id.* If the redacted staff members' names are disclosed, the "abusive, harassing, and threatening behavior" would continue for Program staff members. *Id.* ¶ 26.

"[I]n circumstances where agency staff may be involved in or connected to controversial government decisions, particularly on issues associated with targeting for violence, harassment, or other security-related misconduct, withholding has been found appropriate." *Inst. for Energy Research v. FERC*, Civ. A. No. 22-2114, 2023 U.S. Dist. LEXIS 165849, at *39 (D.D.C. Sept. 19, 2023). The Program employees whose names have been withheld here are involved in similarly "controversial" work involving alleged COVID-19 vaccine injuries. May Decl. ¶ 18. The Agency was aware of the harassment, abuse, and concerning communication sent to the Program staff members and fully took it into consideration when deciding whether to withhold the information. The Agency met with Captain Grimes and the former-Deputy Director of the DICP to learn about the harassment and invasions of privacy the Program staff had faced and the steps the DICP had taken to help protect its staff. *Id.* ¶¶ 11-13. After learning about the harassment and invasions of privacy, the Agency "separately determined that the concerns raised [] were valid and warranting withholding the Programs' staff members' names. *Id.* ¶ 14. There is a genuine and palpable risk that the Program staff members, who are low-level employees with no executive responsibilities, would be subjected to harassing, abusive, and threatening communications and behavior. *Id.*

12

¶ 19, 24. Thus, the Agency has established that the Program employees have a substantial privacy interest in not having their identities disclosed—to be free from harassment, abuse, and danger of personal physical harm.[4] *Id.* ¶ 20.

The Agency has disclosed the names of the Director and Deputy Director of the program. This Circuit has long recognized that Exemption 6 "provides greater protection to private individuals . . . and to low-level government employees, than to government officials with executive responsibilities." *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C. Cir. 1982). The privacy interests the other employees' have extends to all such employees, and the Agency need not "justify the withholding of [names] on an individual-by-individual basis under FOIA Exemption 6." *Gallant v. Nat'l Lab. Rels. Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994). The fact that there have been threats to some employees in the Program is sufficient to protect them all.

**B.    The Public Interest in Disclosure of CICP Personnel Names is Minimal and Their Privacy Interests Far Outweigh Any Such Public Interest.**

On the other hand, there is minimal (at most) public interest in disclosing the identifying information of these individuals because disclosure would shed little light on the government's exercise of its statutory duties or what the government is up to. "The public does not learn anything about 'what [its] government is up to' by gaining access to 'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.'" *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (quoting *Reps. Comm.*, 489 U.S. at 773) (upholding SEC's withholding of identifying information of SEC staff); *see also Carlborg v. Dep't of Navy*, Civ. A. No. 18-1881 (DLF), 2020 WL 4583270,

---

[4]    For these same reasons, Defendants have also established that harm from disclosure of the identities of the Program employees is "reasonably foreseeable." *See* 5 U.S.C. § 552(a)(8)(A) (permitting an agency to withhold information pursuant to a valid FOIA exemption if "the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption").

at *8 (D.D.C. Aug. 10, 2020) (Department of Defense personnel's privacy interest in "keeping their names and personal identifying information from being disclosed" outweighed "minimal" public interest as names and identifying information reveal little or nothing about what the Government is up to). Given that the only public interest relevant for purposes of Exemption 6 is one that focuses on "the citizens' right to be informed about what their government is up to," that interest cannot overcome the Program employees' interests here because the disclosure of the names will "reveal[] little or nothing about an agency's own conduct." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492-93 (D.C. Cir. 1993) (quoting *Reps. Comm.*, 489 U.S. at 773).

"Releasing the names of the Program staff below the Deputy Director level would reveal very little about the operations of the Program." May Decl. ¶ 22. "While there may be some de minimis public interest in the names of individuals who work on the Program, the names of the employees do not reveal how the applications are processed, how the Program is administered, or how final determinations of applications are made." *Id.* "Because there is such a clear threat of harassment, invasions of personal privacy, and potential harm for employees who are associated with the Program and the release of the names would not shed any significant light on how the Program is run, [Defendants] determined that the privacy interests of the employees in not having their names associated with the Program outweighs any de minimis public interest in this information and therefore, should be withheld under Exemption 6." *Id.* ¶ 24.

In light of the strong privacy interests the affected individuals have in "avoiding physical danger" and harassment, *Jud. Watch*, 449 F.3d at 153, such interests clearly outweigh the minimal public benefit that can be gained from revealing their identities. "There is information available on HRSA's website about the Program. *See* https://www.hrsa.gov/cicp. This publicly available information provides a plethora of information about the Program." May Decl. ¶ 23. In light of the

14

information readily available about the Program on public resources, the "incremental value" of revealing the identities of the employees is minuscule. *Schrecker*, 349 F.3d at 661. Disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and therefore the Agency properly withheld the identifying information.

The D.C. Circuit has previously flatly rejected an attempt to compel disclosure of the names of Federal Drug Administration personnel who worked on the approval of the abortion pill mifepristone. *Jud. Watch*, 449 F.3d at 152-53. The D.C. Circuit found that the privacy interest of the individuals in avoiding injury and embarrassment outweighed the opposing public interest, which in fact "was not immediately apparently," in knowing the identifying information. *Id.* at 153. The D.C. Circuit rejected the plaintiff's argument that "the public needs the information because mifepristone may pose dangerous health risks to women who use it." *Id.* The Court explained, "Even if mifepristone has significant health risks, these names and addresses prove nothing about the nature or even the existence of the risks. In the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales." *Id.*

Further, in a similar case to the one now before the Court, a FOIA requestor sought the identities of National Institutes of Health officials involved in a fetal tissue research grant, and Judge Howell unequivocally held that the privacy interests at stake outweighed the public interest. *Ctr. for Med. Progress*, 685 F. Supp. 3d at 16-18. This Court should adopt Judge Howell's well-reasoned and thoughtful decision. In *Center for Medical Progress*, the FOIA requestor sought the disclosure of similar information withheld here—the names of federal employees involved in a "controversial program" involving fetal tissue. *Id.* at 11. Judge Howell rejected the plaintiff's argument that revealing the identity of a federal employee would "further[] [the] aim" of revealing "potential government wrongdoing." *Id.* at 18. Judge Howell distinguished material relevant to

15

plaintiff's "attempt to unravel a supposed web of government noncompliance"—"the *actions* of individuals"—from material that is not relevant—the names of those individuals. *Id.* (emphasis in original). Judge Howell rejected the plaintiff's argument for disclosure because the "great privacy interest" in protecting the officials' identity from "the real risk of threats, harassment, and violence" far outweighed the "extremely limited public interest" in the names of the individuals. *Id.* For the same reasons set forth in *Center for Medical Progress*—i.e., because the privacy interests of the individuals to be free from harassment and danger far outweigh the public interest in their specific identities—this Court should grant Defendants' motion for summary judgment and enter judgment in their favor.

Finally, it is foreseeable that if the names of these individuals were released then it would harm the interests that Exemption 6 protects. "The very context and purpose of" a record can "make the foreseeability of harm manifest." *Reps. Comm.*, 3 F.4th at 372. "It is reasonably foreseeable that disclosing these records would harm interests that Exemption 6 protects." May Decl. ¶ 27. "There is [] a clear threat of harassment, invasions of personal privacy, and potential harm for employees who are associated with the Program." *Id.* ¶ 24. Defendants believe that "releasing the Program staff members' names would subject them to harassment, abuse, invasions of personal privacy, and could put their lives in danger." *Id.* ¶ 28.

The very fact that releasing these records would cause a clearly unwarranted invasion of personal privacy makes the harm of disclosure virtually self-evident. *See, e.g.*, *WP Co. LLC v. SBA*, 575 F. Supp. 3d 114, 121 (D.D.C. 2021) (recognizing that "it is not difficult to note how people would be injured by the release of their" private personnel information, and questioning whether an agency "must demonstrate foreseeable harm for [ ] Exemption 6 withholdings" at all); *Chelmowski v. United States*, Civ. A. No. 17-1394, 2021 WL 3077558, at *5 (D.D.C. July 21,

2021) ("protecting personal information . . . is directly related to Exemption 6's goal"); *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 73 n.1 (D.D.C. 2018) (questioning whether agency must show foreseeable harm under Exemption 6 at all); *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 WL 4534627, at *6 (D.D.C. Sept. 28, 2022) ("fulfilling the terms of exemptions outside Exemption 5 goes a long way to meeting the foreseeable harm requirement" (cleaned up)).

## II.    The Agency Produced All Reasonably Segregable, Non-Exempt Information

An agency must take reasonable steps to segregate and release all non-exempt portions of responsive records. 5 U.S.C. §§ 552(a)(8)(A)(ii)(I), 552(b). Non-exempt portions of a responsive record need not be produced if "they are inextricably intertwined with exempt portions." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (internal quotation marks omitted). Under FOIA, the segregability analysis "does not call for parsing [a record] line-by-line or segregating material dispersed throughout the document. Instead, the emphasis is on segregation of non-exempt material found in logically divisible sections." *Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*, 844 F.3d 246, 257 (D.C. Cir. 2016) (cleaned up). "When an agency demonstrates that records contain exempt information, as the [Agency] has done, it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1058, 1051 (D.C. Cir. 2023) (cleaned up). The requester may "rebut this presumption" only if it offers "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* (cleaned up).

Here, the Agency properly "reviewed the challenged record, line-by-line, and produced all the non-exempt material that could be reasonably segregated within the record." May Decl. ¶ 30. The Agency "evaluated the relevant withholdings made under FOIA Exemption 6 and found that if the names were released, it is reasonably foreseeable that they could be used to contact Program staff members and send harassing and abusive communication and invade their personal privacy.

None of the names could be released without this palpable risk being present." *Id.* ¶ 31. Therefore, all reasonably segregable information has been released.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for summary judgment. A proposed order is enclosed herewith.

Dated: July 15, 2024                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:        */s/ Kaitlin K. Eckrote*
KAITLIN K. ECKROTE, D.C. Bar #1670899
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252–2485
Kaitlin.Eckrote@usdoj.gov

*Attorneys for the United States of America*