UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HEALTH RESOURCES AND SERVICES ADMINISTRATION, et al.,<br><br>　　　　　Defendants. | Civil Action No. 24-0549 (JMC) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Civil Rule 7(h), the Health Resources and Services Administration and United States Department of Health and Human Services ("Defendants") respectfully submits the following statement of material facts as to which there is no genuine dispute:

1. On December 12, 2023, Plaintiff submitted a Freedom of Information Act ("FOIA") request to Defendants seeking the following: "All records sufficient to identify all agency personnel involved with the Countermeasures Injury Compensation Program ("CICP")." Brian May Decl. ¶ 5.

2. On December 15, 2023, Defendants sent an acknowledgment letter to Plaintiff and assigned the request as FOIA Case No. 12122024F109. *Id.* ¶ 6.

3. On December 27, 2023, Defendants sent Plaintiff a final determination letter and produced one responsive record with redactions pursuant to FOIA Exemption 6. *Id.* ¶ 14.

4. The redactions consisted of the names of the Countermeasures Injury Compensation Program staff members below the Deputy-Director level. *Id.* ¶ 15; s*ee* Exhibit 3.

5. On January 6, 2024, Plaintiff appealed Defendants' withholdings. May Decl. ¶ 15.

6. On February 27, 2024, Plaintiff filed a Complaint against Defendants in Civ. A. No. 24-0549 (JMC). *Id.* ¶ 16.

7. Plaintiff has represented it is not currently challenging the adequacy of the Agency's search. *Id.* ¶ 9.

8. The Public Readiness and Emergency Preparedness ("PREP") Act authorizes an administrative, no-fault compensation program to compensate (i) certain individuals or estates of individuals who sustain serious physical injuries and (ii) certain survivors of individuals who die, when such injuries or deaths are directly caused by the administration or use of covered countermeasures identified in and administered or used under a PREP Act declaration. George Reed Grimes Decl. ¶ 6. *See also* 42 U.S.C. § 247d-6e(a); 42 C.F.R. § 110.10(a).

9. In 2020, the Secretary of HHS issued a PREP Act declaration for medical countermeasures against COVID-19, which includes COVID-19 vaccines that meet the criteria in the PREP Act declaration. Grimes Decl. ¶ 7.

10. A claim is eligible for compensation only when there is "compelling, reliable, valid, medical and scientific evidence" that a covered countermeasure directly caused a serious physical injury or death. 42 U.S.C. §247d-6e(b)(4).

11. Individuals may seek compensation by filing a Request for Benefits and submitting the required documentation, such as medical records, supporting their claim. Grimes Decl. ¶ 8.

12. The Countermeasures Injury Compensation Program ("the Program") administrative staff perform a variety of administrative functions, including reviewing incoming Request Packages to confirm that all expected documentation is received, and that the requester met the statutory one-year filing deadline. *Id.* ¶ 9.

13. The Program administrative staff also communicates with requesters regarding their claims. *Id.*

14. The Program medical review staff review the submitted documentation and evaluate whether there is compelling, reliable, valid, medical, and scientific evidence that a covered countermeasure directly caused a serious injury or death. *Id.* ¶ 10.

15. Only the Director of the Division of Injury Compensation Programs is delegated authority to make eligibility determinations. *Id.*

16. On at least two occasions, the general Program email inbox has received harassing emails containing abusive language such as "I have absolutely no legal recourse because of your commie bull[expletive] and your forced approval of a known dangerous drug. [EXPLETIVE] YOU SO [EXPLETIVE] MUCH DEATH TO AMERICA" and "GO [EXPLETIVE] YOUR SELF LEFTIST PROPAGANDA FREAK." *Id.* ¶ 11.

17. Harassing voicemails have been left on government phones berating government employees and referencing sexually explicit acts. *Id.* ¶ 12.

18. The Director of the Division of Injury Compensation Program ("DICP"), Captain George Reed Grimes, has received emails asking him personal questions such as why his wife did not opt to take his last name, as well as harassing communication sent to his personal cellphone number. *Id.* ¶ 13.

19. Captain Grimes, as well as two other staff members who support the Program, have received harassing and abusive language sent to their government email account and voicemail. These emails include being told that "Hitler had the same mindset," that they are a "coward," that they "lie and cover [their expletives]," that "God is watching," that they are "useless DNA," that

they "suck the life out of people," references to explicit sexual acts, and that "Human life means nothing!" *Id.* ¶ 14.

20. Other harassing and abusive emails include attachments. One included an image that said, "Sometimes you have to stay silent because no words can explain what is going on in your mind and your heart." The text of the actual email said, "Not in this case. You inconsiderate fools need to do your jobs. I sometimes wonder how you could act if this was your loved ones. Not really, you already lie to protect yourself." Attached to a different email was an image that said, "Some people were not put here to evolve. They are here to remind you what it looks like if you don't." The text of the actual email said "So true. You are all an embarrassment. [Explicit] and do your job!" *Id.* ¶¶ 14, 16.

21. Captain Grimes' wife has also received similar harassing messages on her personal cellphone. *Id.* ¶ 15.

22. Another Program staff member ("Staff member 2") spoke with requesters via telephone and on several occasions was subjected to verbally abusive language and was compelled to terminate phone calls. *Id.* ¶ 17.

23. Staff member 2 also communicated with requesters via email, and received abusive, threatening, and harassing emails via that medium as well. *Id.* ¶ 18.

24. Captain Grimes, Staff member 2, and another Program staff member ("Staff member 3") received an email with "Hahahaha" in the subject line and an attached picture of Staff member 2 and their spouse together at a private function. *Id.*

25. Staff member 2 included an Out of Office message on their email, which included contact information for Captain Grimes and Staff member 3. A requester used this notification to initiate harassing emails to Captain Grimes and Staff member 3. *Id.* ¶ 19.

4

26. Staff member 3 received an email containing derogatory language and linking to an article written about them at their prior place of employment. *Id.* ¶ 20.

27. Staff member 3 received an email included a screenshot of an article written about a school shooting at their alma mater. *Id.*

28. Captain Grimes reported the invasions of his and his staff's personal privacy and the harassing behavior to a local police department and to the Department of Homeland Security's Federal Protective Services. *Id.* ¶¶ 20, 22.

29. The Program implemented safeguards to prevent disclosure of information that would externally identify individual roles within the relevant Program to address safety concerns, including informing staff of the safety concerns and recommending they remove mention of specific programmatic roles/employment on social media pages, removing names from Program documentation when not necessary, and disseminating instructions to staff on how to post safe Out of Office messages. *Id.* ¶ 24.

30. As a direct result of the harassment invasion of his personal privacy, Captain Grimes purchased an alarm system for his home. *Id.* ¶ 25.

31. The harassment also impacted the timing of Captain Grimes' decision to get a dog to contribute to home security. *Id.*

32. Prior to releasing the redacted responsive record to Plaintiff, HRSA FOIA Officer Brian May was informed that the Program was concerned about releasing the names of the Program staff because of the harassing and abusive emails and text messages sent to Captain Grimes and to lower-level members of Program staff. May Decl. ¶ 10.

33. FOIA Officer May met with Captain Grimes and the now-retired Deputy Director of the DICP to learn about the harassment that the Program staff were subjected too. *Id.* ¶ 11.

34. Captain Grimes and the former Deputy Director detailed to FOIA Officer May the types of harassment that Captain Grimes and the staff had received. *Id.* ¶ 12.

35. Captain Grimes explained to FOIA Officer May that individuals had contacted his wife's personal cell phone and that he had purchased a home security system. *Id.*

36. They also discussed that the Program contacted both the U.S. Department of Homeland Security Federal Protective Services and local law enforcement. *Id.*

37. FOIA Officer May asked if the DICP had removed identifying information about the lower-level Program employees from their websites and the HHS Employee Directory, to which they informed him that the Program had started that process. *Id.* ¶ 13.

38. After learning of the harassment and invasions of privacy, FOIA Officer May separately determined that the concerns raised were valid and warranted withholding the Programs' staff members' names. *Id.* ¶ 14.

39. FOIA Officer May determined that there would be little to no public value served by revealing the lower-level employees' identities. *Id.* ¶ 15.

40. The staff members whose names were withheld are not final decisions makers, and their information is not as widely known as the Director or Deputy Director. *Id.* ¶ 19.

41. The Director and Deputy Director are the decisions makers, and their information was already widely known on the internet. *Id.*

42. The names withheld are those of low-level government employees with no executive responsibilities. *Id.* ¶ 20.

43. Releasing the names of the Program staff below the Deputy Director level would reveal very little about the operations of the Program and how it is run. *Id.* ¶ 22.

44. The names of the employees do not reveal how the applications are processed, how the Program is administered, or how final determinations of applications are made. *Id.*

45. There is a plethora of publicly available information online on HRSA's website about the Program. *Id.* ¶ 23; *see also* https://www.hrsa.gov/cicp.

46. The consequences of revealing the names of these individuals could be dangerous and substantially outweighs any public interest. May Decl. ¶ 25.

47. Releasing the Program staff members' names would subject them to harassment, abuse, invasions of personal privacy, and could put their lives in danger. *Id.* ¶ 28.

48. FOIA Officer May reviewed the challenged record, line-by-line, and produced all 0the non-exempt material that could be reasonably segregated within the record. *Id.* ¶ 30.

49. If any of the redacted the names were released, it is reasonably foreseeable that they could be used to send harassing and abusive communication to Program staff and invade their personal privacy. None of the names could be released without this palpable risk being present. *Id.* ¶ 31.

Dated: July 15, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ *Kaitlin K. Eckrote*
KAITLIN K. ECKROTE, D.C. Bar #1670899
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252–2485

*Attorneys for the United States of America*