**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

INFORMED CONSENT ACTION NETWORK,

                            Plaintiff,

       v.

HEALTH RESOURCES AND SERVICES
ADMINISTRATION et al.,

                      Defendants.

Civil Action No. 24-cv-00549-JMC

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD................................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

DEFENDANTS IMPROPERLY WITHHELD THE NAMES OF CICP EMPLOYEES
PURSUANT TO EXEMPTION 6 ......................................................................................... 5

I.   EXEMPTION 6 DOES NOT CATEGORICALLY EXEMPT THE NAMES OF
GOVERNMENT EMPLOYEES ...................................................................................... 6

II.  DISCLOSURE OF CICP EMPLOYEES' NAMES IMPLICATES A DE MINIMIS
PRIVACY INTEREST .................................................................................................... 8

III. THE PUBLIC'S INTEREST IN THE NAMES OF CICP EMPLOYEES IS
SIGNIFICANT ............................................................................................................. 16

A.  Status of CICP Claims ......................................................................................... 17

B.  CICP Process ........................................................................................................ 18

C.  Defendants Overstate the Broad Privacy Interests That They Assert.................... 20

D.  The Public's Interest in the Names of CICP Employees Far Outweighs Any
Possible Privacy Interest ...................................................................................... 28

CONCLUSION.......................................................................................................................... 35

TABLE OF AUTHORITIES

**Cases**

*ACLU v. United States DOJ*,
  665 F.3d 1 (2011),................................................................................................ 31, 32

*Aguirre v. SEC*,
  551 F. Supp. 2d 33 (D.D.C. 2008) ........................................................................ 8, 28

*Am. Oversight v. United States GSA*,
  311 F. Supp. 3d 327 (D.D.C. 2018) ...................................................................... 33, 34

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................ 2

*Baldrige v. Shapiro*,
  455 U.S. 345 (1982)................................................................................................ 34

*Boyd v. Crim. Div. of the United States DOJ*,
  475 F.3d 381 (D.C. Cir. 2007) ............................................................................... 4

*Brennan Ctr. for Justice at NY Univ. Sch. of Law v. United States DOJ*,
  No. 18-1860, 2020 U.S. Dist. LEXIS 42992 (D.D.C. Mar. 12, 2020)...................... 7

*Brock v. Pierce County*,
  476 U.S. 253 (1986)................................................................................................ 25

*Buruca v. Dist. of Columbia*,
  902 F. Supp. 2d 75 (D.D.C. 2012) ......................................................................... 10

*Cannon v. District of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ............................................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................ 2

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*,
  538 F. Supp. 3d 124 (D.D.C. 2021) ....................................................................... 3

*Cochran v. United States*,
770 F.2d 949 (11th Cir. 1985)..................................................................... 33

*Corel Corp. v. U.S.*,
165 F. Supp. 2d 12 (D.D.C. 2001) .............................................................. 4

*Ctr. For Med. Progress v. Dep't of Health & Hum. Servs.*,
685 F. Supp. 3d. 8 (D.D.C. 2023)…………………………………………..23

*Ctr. For Med. Progress v. Dep't of Health & Hum. Servs.*,
Civ. A. No. 23-5224, 2024 WL 226234 (D.C. Cir. May 15, 2024)…………………………..23

*Ctr. for Med. Progress II*,
2022 U.S. Dist. LEXIS 233889 .................................................................... 23

*Department of the Air Force v. Rose*,
425 U.S. 352 (1976) .................................................................................. 34

*Electronic Frontier Foundation v. Office of the Director of Nat'l Intelligence*,
639 F.3d 876 (9th Cir. 2010)...................................................................... 29

*Esch v. Yeutter*,
876 F.2d 976 (D.C. Cir. 1989) ................................................................... 4

*Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*,
470 U.S. 480 (1985) .................................................................................. 26

*Friends of Blackwater v. United States DOI*,
391 F. Supp. 2d 115 (D.D.C. 2005) ........................................................... 3

*Gilman v. United States Dept. of Homeland Sec.*,
32 F. Supp. 3d 1 (D.D.C. 2014) .......................................................... 7, 29, 31

*Gordon v. FBI*,
390 F. Supp. 2d 897 (N.D. Cal. 2004) ....................................................... 8, 28

*Hudson v. Dep't of Army*,
No. CIV.A. 86-1114, 1987 WL 46755 (D.D.C. Jan. 29, 1987),
*aff'd*, 926 F.2d 1215 (D.C. Cir. 1991)........................................................ 21

*Inst. for Energy Rsch. v. FERC*,
    No. 22-2114, 2023 U.S. Dist. LEXIS 165849 (D.D.C. Sep. 19, 2023) .................................... 10

*Inst. for Energy Rsch. v. FERC*,
    No. 22-cv-3414, 2024 U.S. Dist. LEXIS 43910 (D.D.C. Mar. 13, 2024)................................ 15

*Jud. Watch, Inc. v. FDA*,
    407 F. Supp. 2d 70 (D.D.C.2005),
    *aff'd in part, remanded in part*, 449 F.3d 141 (D.C. Cir. 2006) ............................................. 21

*Jud. Watch, Inc. v. FDA.*,
    449 F.3d 141 (D.C. Cir. 2006) ................................................................................. 7, 21, 22, 28

*Jud. Watch, Inc. v. United States Dept. of State*,
    282 F. Supp. 3d 36 (D.D.C. 2017) ........................................................................................ 28

*Jud. Watch, Inc. v. United States DOC*,
    375 F. Supp. 3d 93 (D.D.C. 2019) .......................................................................................... 4

*Jud. Watch of Florida, Inc. v. U.S. Dep't of Justice*,
    102 F. Supp. 2d 6 (D.D.C. 2000) ......................................................................................... 16

*Jurewicz v. U.S. Dep't of Agric.*,
    741 F.3d 1326 (D.C. Cir. 2014) ........................................................................................... 16

*Leadership Conference on Civil Rights v. Gonzales*,
    404 F. Supp. 2d 246 (D.D.C. 2005) ................................................................................... 8, 28

*Markowicz v. Johnson*,
    206 F. Supp. 3d 158 (D.D.C. 2016) ..................................................................................... 12

*Media Research Ctr. v. U.S. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ....................................................................................... 2

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007................................................................................... 11, 29, 34

*Multi Ag Media LLC v. U.S.  Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) ................................................................................... passim

*NAACP v. Claiborne Hardware*,
    458 U.S. 886 (1982) ................................................................................................ 20

*Nat'l Archives and Records Admin. v. Favish*,
    541 U.S. 157 (2004) ............................................................................................ 5, 16

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ............................................................................ 28, 29

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
    279 U.S. App. D.C. 27 (D.C. Cir. 1989)…………………………………………………..7

*Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*,
    828 F. Supp. 2d 183 (D.D.C. 2011) ......................................................................... 26

*News-Press v. U.S. Dep't of Homeland Sec.*,
    489 F.3d 1173 (11th Cir. 2007)................................................................... 25, 31, 32

*People for the Am. Way Found. v Natl. Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) ......................................................................... 16

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................. 12

*Pinson v. DOJ*,
    160 F. Supp. 3d 285 (D.D.C. 2016) ......................................................................... 15

*Pub. Citizen Health Rsch. Grp.*,
    185 F.3d 898 (D.C. Cir. 1999) ................................................................................... 3

*Robinson v. Duncan*,
    775 F. Supp. 2d 143 (D.D.C. 2011) ......................................................................... 10

*Rosenberg v. United States DOD*,
    342 F. Supp. 3d 62 (D.D.C. 2018) ............................................................................. 4

*SAI v. Transp. Sec. Admin.*,
    315 F. Supp. 3d 218 (D.D.C. 2018) ........................................................................... 7

*Sims v. CIA*,
   642, F.2d 562 (1980) ................................................................................................ 7

*Smith v HRSA. et al.*,
   no. 23-01425 (W.D. La. filed Oct. 10, 2023)…………………………………………………27

*Smith v HRSA. et al.*,
   no. 24-00334 (N.D. Tex. Filed April 18, 2024…………………………………………..27

*Stein v. CIA*,
   454 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................. 7

*Students Against Genocide* v. *Dep't of State*,
   257 F.3d 828 (2021) ................................................................................................ 3

*Tokar v. Department of Justice*,
   304 F. Supp. 3d 81 (D.D.C. 2018) ......................................................................... 23

*U.S. Dep't of Def., Dep't of Military Affairs v. Fed. Labor Relations Auth.*,
   964 F.2d 26 (D.C. Cir. 1992) .................................................................................. 20

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) .......................................................................................... 16, 33

*United States Dep't of State v. Ray*,
   502 U.S. 164 (1991) ............................................................................................ 7, 34

*United States v. Suarez*,
   880 F.2d 626 (2d Cir. 1989) ................................................................................... 25

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*,
   223 U.S. App. DC 139 (1982) ........................................................................... 25, 26

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*,
   690 F.2d 252 (D. C. Cir. 1982) ......................................................................... 29, 34

*Wash. Post Co. v. U.S. Dep't of Just.*,
   863 F.2d 96D.C. Cir. 1988) ...................................................................................... 4

*Watts v. United States*,
  394 U.S. 705 (1969) ................................................................................................ 20

*White Coat Waste Project v. United States VA*,
  443 F. Supp. 3d 176 (D.D.C. 2020) ................................................................. 7, 30

**Statutes**

42 C.F.R. § 110.10 ................................................................................................... 34

45 C.F.R. Part 5 ......................................................................................................... 2

5 U.S.C. § 552 ................................................................................................... passim

42 U.S.C. § 247d-6e…………………………………………………………………...19

Fed. R. Civ. P. 56 ................................................................................................... 2, 9

**Other Authorities**

S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965) ................................................... 34

Informed Consent Action Network ("**ICAN**" or "**Plaintiff**") respectfully submits this Memorandum in opposition to the Health Resources and Services Administration ("**HRSA**") and the U.S. Department of Health and Human Services' ("**HHS**") (collectively, the "**Defendants**") Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for Summary Judgment. This matter concerns a Freedom of Information Act ("**FOIA**") request submitted by ICAN to HRSA seeking copies of records sufficient to identify all agency personnel involved with the Countermeasures Injury Compensation Program ("**CICP**"). HRSA identified one page of responsive records that included thirty-seven names. HRSA redacted thirty-five of them, citing 5 U.S.C. § 552(b)(6) ("**Exemption 6**"). HRSA has plainly failed to satisfy its obligations under FOIA, and ICAN requests that this Court grant summary judgment in ICAN's favor.

## BACKGROUND[1]

ICAN is a not-for-profit news media organization that actively investigates and disseminates scientifically based health information regarding the safety of vaccines and other medical treatments for free through its website and its weekly health news and talk show. ICAN's mission is to put health information in the hands of the public to enable informed consent concerning medical decisions.[2] As part of its mission, on December 12, 2023, ICAN submitted a FOIA request to HRSA for copies of records sufficient to identify all agency personnel involved with the CICP. (Dkt. 1-1 at 2.) The CICP is the only available remedy for people who were injured by a COVID-19 countermeasure, including the vaccine. On December 27, 2023, HRSA provided a list of thirty-seven names, thirty-five of which were redacted on the grounds that the requested

---

[1] ICAN incorporates Plaintiff's Counter-Statement of Material Facts as to Which There is no Genuine Issue, filed with this memorandum.

[2] https://icandecide.org/.

records were exempt from disclosure by FOIA Exemptions 6 and 45 C.F.R. Part 5. (Dkt. 1-3 at 2, 16-5 at 2.)

On January 6, 2024, ICAN appealed HRSA's denial on the grounds that it improperly withheld the names under Exemption 6. (Dkt. 1-4.) On January 10, 2024, HHS acknowledged receipt of ICAN's appeal and advised that it would need to consult with another office. (Dkt. 1-5 at 2.) On February 27, 2024, ICAN filed this suit on the grounds that HRSA violated FOIA by failing to issue a timely final determination on its appeal and improperly withholding responsive records. (Dkt. 1.) Defendants filed their Answer on May 1, 2024. (Dkt. 11.) On July 18, 2024, Defendants filed the instant Motion for Summary Judgment. (Dkt. 16.) ICAN opposes Defendants' Motion for Summary Judgment and cross-moves for summary judgment as there are no genuine issues of material fact in this matter, and Defendants have not satisfied their FOIA obligations. The issue presented is whether releasing the names of federal CICP employees would result in an unwanted invasion of privacy under FOIA Exemption 6.

## LEGAL STANDARD

A movant is granted summary judgment upon showing "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A material fact is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The moving party bears the burden of demonstrating [the] absence of a genuine issue of material fact in dispute." *Media Research Ctr. v. U.S. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An agency moving for summary judgment must prove that "it has fully discharged its obligations under the FOIA,

after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Id.* at 137; *Friends of Blackwater v. United States DOI*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005). An agency withholding records under FOIA has the burden of proving that requested material falls within a FOIA exemption. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 131 (D.D.C. 2021).

Thus, Defendants are only entitled to summary judgment "if no material facts are in dispute and if [they] demonstrate that each document that falls within the class requested either has been produced . . . or is . . . exempt from [disclosure]." *Students Against Genocide* v. *Dep't of State*, 257 F.3d 828, 833 (2021). Even when the requester files a motion for summary judgment, the government "ultimately [has] the onus of proving that the [documents] are exempt from disclosure." *Id*. (quoting *Pub. Citizen Health Rsch. Grp*., 185 F.3d 898, 904 (D.C. Cir. 1999) (alterations in original)). However, "[t]he burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Id*. (cleaned up).

Generally, courts limit their review to the information contained within the administrative record; however, the D.C. Circuit has held that supplemental evidence may be properly admitted:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (footnote omitted). "Put another way, [c]ourts admit outside evidence primarily as a means of requiring an agency to explicate its own reasoning when the record is unclear." *Corel Corp. v. U.S.*, 165 F. Supp. 2d 12, 31 (D.D.C. 2001) (internal quotation marks omitted). (*See* Decl. of Allison R. Lucas.)

Finally, pursuant to Congress's 2016 amendment to the FOIA, Defendants can only withhold information "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest" and the law does not prohibit the disclosure. *Judicial Watch, Inc. v. United States DOC*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (quoting *Rosenberg v. United States DOD*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018)).

## ARGUMENT

ICAN is entitled to summary judgment because there are no genuine issues of material fact. Defendants are not entitled to summary judgment because they have not proved and cannot prove that they have fully discharged their obligations under FOIA. Defendants have identified names of CICP employees that are responsive to ICAN's request, which are not exempt from disclosure, and which they have not produced to ICAN. Defendants improperly withheld the information pursuant to Exemption 6.

"[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly." *Wash. Post Co. v. U.S. Dep't of Just.*, 863 F.2d 96, 101 (D.C. Cir. 1988). In a FOIA action, the agency has "th[e] burden of demonstrating that the withheld documents are exempt from disclosure." *Boyd v. Crim. Div. of the United States DOJ*, 475 F.3d

381, 385 (D.C. Cir. 2007). When evaluating withholdings under Exemption 6, there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted) (emphasis added). Therefore, an agency may withhold personal information only if disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest. *Id.* at 1228. Furthermore, even when a privacy interest exists, the interest must be weighed against the public interest in the disclosure of the records to determine whether disclosure would constitute a clearly *unwarranted* invasion of privacy. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("The term 'unwarranted' requires us to balance the . . . privacy interest against the public interest in disclosure.")

Defendants cannot withhold the names of CICP employees because (1) the threshold requirement of showing that Exemption 6 is triggered is not met, (2) the general rule that government employees do not have a significant privacy interest in their names alone has not been overcome, and (3) the intense public interest in CICP and its employees outweighs any purported privacy interest in CICP employee's names.

ICAN is entitled to the information it seeks as a matter of law and is entitled to summary judgment, and Defendants' request for summary judgment must be denied.

## DEFENDANTS IMPROPERLY WITHHELD THE NAMES OF CICP EMPLOYEES PURSUANT TO EXEMPTION 6

Defendants improperly applied Exemption 6 to withhold the names of CICP employees who are tasked with determining whether U.S. citizens who have been injured by a COVID-19 vaccine are eligible for compensation. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Defendants claim it is "indisputable that the names of [CICP]

employees are 'bits of personal information' that are eligible for protection under Exemption 6."
(Dkt. 16-1 at 6-7.) However, the release of names of governmental employees is not an inherent
invasion of privacy, and this is a threshold issue that must be resolved. Once the threshold issue of
whether the governmental employee has a privacy interest in withholding his or her identity is
addressed, the Court must next determine whether disclosure of the information "would constitute
a clearly unwarranted invasion of personal privacy," (*Multi Ag. Media LLC v. Dep't of Agric.*, 515
F.3d) (quoting 5 U.S.C. § 552(b)(6))), by "balanc[ing] the privacy interest that would be
compromised by disclosure against any public interest in the requested information." *Id*. (citations
omitted). Specifically, the Court must determine whether disclosure "would compromise a
substantial, as opposed to *de minimis*, privacy interest, because [i]f no significant privacy interest
is implicated . . . FOIA demands disclosure." *Id*. at 1229 (cleaned up). As explained below, federal
CICP employees do not have a privacy interest in their identity, and even if they did, the public
interest in disclosing their names outweighs any interest that Exemption 6 is meant to protect.

## I.   EXEMPTION 6 DOES NOT CATEGORICALLY EXEMPT THE NAMES OF GOVERNMENT EMPLOYEES

ICAN seeks the names of CICP employees responsible for reviewing CICP claims.
Defendants make the bold assertion that it is "indisputable" that the names of CICP employees are
eligible for protection under Exemption 6 (Dkt. 16-1 at 6) but fail to otherwise address this
threshold question, which is especially telling in light of the government's burden to justify
nondisclosure. Despite Defendants' failure to address this issue, the reality is that, as a threshold
matter, the Court must determine whether the withheld names constitute "similar files" to
"personnel and medical files" that are subject to Exemption 6. 5 U.S.C. § 552(b)(6). The privacy
interests at stake regarding the names of CICP employees are not self-evident because "[i]n
construing Exemption 6, the D.C. Circuit has held that the disclosure of names . . . is not inherently

and always a significant threat to the privacy of those listed . . . ." *Gilman v. United States Dept. of Homeland Sec.*, 32 F. Supp. 3d 1, 11 (D.D.C. 2014). *See also United States Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991) (noting that disclosure of a list of names is not "inherently and always a significant threat to the privacy of the individuals on the list.").

The question here is whether the federal CICP employees, who are paid with tax dollars and who are responsible for evaluating claims and entitlement to benefits for injured Americans, have a privacy interest in maintaining complete anonymity. Exemption 6 "does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'" *Jud. Watch, Inc. v. Food & Drug. Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (internal quotation marks omitted); *see also Brennan Ctr. for Justice at NY Univ. Sch. of Law v. United States DOJ*, No. 18-1860, 2020 U.S. Dist. LEXIS 42992, at *8 (D.D.C. Mar. 12, 2020) (holding the "mere fact that an agency file or record contains personal, identifying information . . . is not enough to invoke Exemption 6"); *White Coat Waste Project v. United States VA*, 443 F. Supp. 3d 176, 191 (D.D.C. 2020)) (same); *Stein v. CIA*, 454 F. Supp. 3d 1, 19 (D.D.C. 2020) (holding that "Exemption 6 does not warrant withholding the names . . . merely disclosing their names would not constitute a clearly unwarranted violation of their privacy); *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 262 (D.D.C. 2018) (holding the "disclosure of names . . . is not inherently and always a significant threat to . . . privacy"); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 279 U.S. App. D.C. 27 (D.C. Cir. 1989) (disclosure of names and addresses of individuals on government annuity rolls involves only a "modest" privacy interest, despite expectation of a "barrage of solicitations" by mail, phone, and at home . . . ."); *Sims v. CIA*, 642, F.2d 562, 574 (1980) (holding information concerning an individual government employee that is "essentially business," rather than personal, in nature does not pass the threshold inquiry); and

*Aguirre v. SEC*, 551 F. Supp. 2d 33, 53 (D.D.C. 2008) (finding that even though the definition of "similar files" does not encompass information that merely identifies the names of government officials who authored documents or received documents and that documents are not personal solely because they identify government employees).

Precedent establishes the general rule that information identifying a government employee by name, unlike a "government record[] on an individual," does not meet Exemption 6's threshold requirement. *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (names of Justice Department paralegals are not "similar to a 'personnel' or 'medical' file"); *Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004) (names of agency employees are not personal information pursuant to Exemption 6 threshold). The rule that names of public servants are not "similar files" differs from the protection afforded to private citizens, primarily because government records about private citizens are virtually always "government records on an individual." In contrast, federal employees' names naturally appear in government records in the ordinary course of business and without the government compiling information on them.

Here, ICAN requests only the names of the federal employees responsible for evaluating CICP claims. That is all. It does not seek intimate personal information, such as email addresses, home addresses, phone numbers, financial information, etc. As a threshold matter, Defendants have not established that these federal CICP employees, who are paid with taxpayer money, have privacy in complete anonymity of their identity.

## II.   DISCLOSURE OF CICP EMPLOYEES' NAMES IMPLICATES A DE MINIMIS PRIVACY INTEREST

If the threshold determination is met that the names are "personnel and medical files and similar files," (and, here, it is not), then the Court must move on to assess whether disclosure of

the names "would compromise a substantial, as opposed to *de minimis*, privacy interest" because FOIA demands disclosure "[i]f no significant privacy interest is implicated." *See Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d. As stated above, ICAN only seeks the names of federal employees responsible for evaluating claims and determining whether awarding benefits is appropriate—not intimate private information such as email addresses, phone numbers, addresses, or financial information. Thus, the character of the information sought is only a name and directly relates to the formal business of an essential federal program in which federal employees cannot reasonably expect complete anonymity.

Defendants have failed to meet their burden of showing that CICP employees' names are exempt under Exemption 6. Defendants' declarations are the only evidence submitted supporting their privacy assertion and are insufficient to show more than a *de minimus* privacy interest in CICP employees' identities. (Dkts. 16-3, 16-4.) Neither declaration is evidence that can properly be considered on a motion for summary judgment. Fed. R. Civ. P. 56(c)(4).

First, Captain Grimes purports to make his declaration based on "personal knowledge and information available to [him] in [his] official capacity." (Grimes Decl. ¶ 5.) However, as a preliminary matter, Grimes did not become the Director of DICP until December 2021, and the declarations fail to provide dates for most of the purportedly harassing communications, including whether they predated Grimes' appointment or if CICP employees who received them were still employed at CICP when Grimes became Director. Thus, Grimes has not established an appropriate basis of knowledge on all aspects of his declaration. Furthermore, Grimes testifies to the nature, content, and volume of phone calls and communications without providing any basis for how he obtained this information. Based on the four corners of the declarations, the information contained therein regarding the purported communications could be twice (or more) removed from Grimes

and thus amount to multiple layers of hearsay. (*See* Plaintiff's Evidentiary Objections Nos. 16-20, 22-25, 28-29, 35.) Grimes did not establish a basis of personal knowledge regarding the alleged communications. A declaration in support of a motion for summary judgment "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. R. 56(c)(4); *see also, e.g.*, *Robinson v. Duncan*, 775 F. Supp. 2d 143, 154 (D.D.C. 2011) (granting summary judgment to defendant where plaintiff's evidence relied in part on statements for which she had no personal knowledge); *Buruca v. Dist. of Columbia*, 902 F. Supp. 2d 75, 82 (D.D.C. 2012) (holding that affidavit's description of video was inadmissible at summary judgment where the video was the best evidence of its content and had not been introduced). Nearly every statement in the Grimes Declaration fails this standard and should be disregarded on this ground alone.

Second, the Grimes (Dkt. 16-4) and May (Dkt. 16-3) declarations lack sufficient detail. For instance, the May Declaration refers to CICP employees at issue as "lower-level" (May Decl., ¶¶ 2, 4) but does not define the term, provide any meaningful details regarding the positions or job descriptions at issue, describe which positions or are considered "lower-level" or explain why these particular employees are so designated. (*See* Plaintiff's Evidentiary Objections No. 5.) Conversely, the Grimes Declaration indicates CICP employees whose names are withheld include "administrative staff" and "medical review staff." (Grimes Decl., ¶¶ 3-4.) These vague and inconsistent descriptions of the status of the employees whose names are withheld are insufficient to justify the withholdings. In *Inst. for Energy Rsch. v. FERC*, No. 22-2114, 2023 U.S. Dist. LEXIS 165849, at *38-39 (D.D.C. Sep. 19, 2023), the Honorable Beryl A. Howell recently held that the agency's

> categorical withholding of the names of so-called 'lower-level staff'
> is simply not sufficiently defined or explained to allow evaluation
> of whether the withholdings are proper. [The agency's] blanket
> excuse of withholding the names of 'lower-level staff' because

> 'disclosure would not shed any light on the workings of [an agency],' puts the cart-before-the-horse by failing to identify first the significant privacy interest at stake justifying withholding before turning to the next step of balancing that privacy interest against the public interest. The privacy interests at stake with the names of lower-level [agency] staff is not self-evident since "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."

*Id.* (cleaned up) (citing *Morley v. CIA*, 508 F.3d 1108, 1128 (D.C. Cir. 2007)).

Third, the declarations are void of pertinent dates, making the declaration useless. For example, neither declaration discloses the date May met with Grimes and the former Deputy Director to "learn about the harassment that the Program staff were subjected too [*sic*]." (May Decl. ¶ 11. *See also* Plaintiff's Evidentiary Objections Nos. 1-4, 16-20, 23-30, 33.) The missing timeline is essential because, during this meeting, Grimes and the former Deputy Director indicated that "the Program had started th[e] process" of removing "identifying information about the lower-level" CICP employees from websites and HHS directory (*Id*. at ¶ 13) but failed to establish **when** it first began this process or **why** it had not yet been completed given the alleged harassment and "concerns" for safety that Grimes and the former Deputy Directory allegedly had in the months leading up to this conversation. For context, the first "harassing" email attached to the Grimes Declaration was dated September 22, 2021. (Grimes Decl. ¶ 11.) Also, between January 2022 and June 2022, "Staff Member 2" was allegedly "on several occasions . . . subjected to verbally abusive language" that "compelled [her] to terminate phone calls." (*Id*. ¶ 17.) In light of the above, the May, Grimes, and former Deputy Director meeting presumably occurred in December of 2023—more than a year after the first "harassing" email was received and after the "abusive" phone calls—and yet Defendants had not bothered to remove the public-facing

11

information regarding the CICP employees' identities by this date. Furthermore, because the declarations are primarily void of dates regarding the other alleged harassing events, such as nondescript phone calls, text messages, and emails, the Court is deprived of knowing when the events occurred. But even *assuming* they happened within a relevant period, it is even more implausible that Defendants had genuine concerns over CICP employees' safety where they failed to remove the public-facing information by December of 2023 (the same month they withheld CICP employees' names pursuant to Exemption 6—claiming concerns over CICP employee's safety). The actions of Defendants in failing to promptly remove CICP employees' information from public view contradicts their position that Exemption 6 protects the identities of CICP employees. Defendants' actions do, however, support that they were determined to withhold this information and upon ICAN's FOIA request, went searching for a justification to do so.

Fourth, Grimes notes that "[h]arassing voicemails have also been left on government phones berating government employees and referencing sexually explicit acts." (Grimes Decl. ¶ 12.) However, Grimes fails to state the date that these voicemails were received or whether they were directed to *CICP* employees (or even DICP employees). Thus, he could be referencing voice messages received by another agency years or decades ago. (*See* Plaintiff's Evidentiary Objections No. 17.)

Fifth, as referenced above, neither declaration indicates when the alleged "abusive" phone calls, texts, or emails received by CICP employees or spouses occurred. For context, the first CICP claim was filed in Fiscal Year 2010 (https://www.hrsa.gov/cicp/cicp-data).[3] Thus, the

---

[3] The Court may take judicial notice of information posted on official public websites of government agencies. *See, e.g.*, *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of*

communications experienced by the unnamed CICP employees and/or spouses cited in the declarations could have occurred over a decade ago, before the COVID-19 pandemic, and could be irrelevant to this litigation. (*See* Plaintiff's Evidentiary Objections Nos. 1-4, 16-20, 23-30.)

Sixth, the vaguely described phone calls, conversations, and emails in the Grimes Declaration demonstrate no nexus between the motivation behind the communications and the duties of CICP employees, including Grimes. For example, that a CICP employee may have endured "abusive" phone conversations or "harassing" emails or voice messages is not inherently relevant to this litigation because the caller's motivation for being "abusive" may have had nothing to do with the employee's role at CICP and the caller or callers are not alleged to have even mentioned anything related to CICP. Likewise, Grimes has not demonstrated that the vaguely described calls, texts, and emails he received are connected to his role in CICP[4] (rather than his role in VICP) or even whether all communications were received during his tenure as Director. For example, it is not self-evident that a person accusing Grimes of being a "coward," having "the same mindset as Hitler," or being a liar (Grimes Decl. ¶ 14) has any connection to his role as Director of CICP and the declarations fail to make any correlation. (*See* Plaintiff's Evidentiary Objections Nos. 17-25, 30, 33.)

---

*Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)).

[4] Grimes' role as Director of the DICP includes directing the National Vaccine Injury Compensation Program ("VICP"). (Grimes Decl. ¶ 4.) Any reference the Grimes Declaration makes to receiving unwanted communications in his role as a "Director" or "the Director of DICP" could refer to his role with VICP and not with CICP. For example, at ¶ 13, Grimes states, "My personal privacy has been directly invaded because of my role as the Director of DICP." At ¶ 15, Grimes states, "My wife has also received similar harassing messages on her personal cell phone, regarding my professional role as Director of DICP." Thus, it is ambiguous whether these alleged events have any bearing on this litigation because any unwanted communication Grimes receives regarding his role with VICP is irrelevant to whether CICP employees have a privacy interest in their identities.

Seventh, Defendants have not demonstrated that the number of purportedly "harassing," "abusive," or "threatening" communications received by CICP, including that by Grimes, is atypical or exceeds that of other federal agencies, divisions, or employees within the government and is, therefore, a reason to treat CICP employees differently than any other federal employee for purposes of Exemption 6. Indeed, no job industry is immune to clients, customers, or the public expressing unwanted displeasure with service or job performance. Furthermore, the May and Grimes' Declarations are silent regarding whether the communications came from the same individual or why the communications are not hyperbole, rhetoric, or other protected speech. (*See* Plaintiff's Evidentiary Objections Nos. 16-19, 21, 33.)

Eighth, the May and Grimes declarations claim that only the Director of CICP has the authority to make eligibility determinations, but neither cites any legal authority for this claim. (Grimes Decl. ¶¶ 4, 10; May Decl. ¶ 19.) Moreover, neither Declaration indicates the extent to which Grimes reviews CICP claims, how often he overrules the recommendations of the "lower-level" CICP employees, or if he routinely rubber stamps them. (*See* Plaintiff's Evidentiary Objections No. 5.) The May Declaration also makes the unsupported statement that withholding CICP employees' names is proper because "there would be little to no public value served by releasing their names" and their information is not as widely known as the Director or Deputy Director." (May Decl. ¶ 19.) May offers no explanation regarding his basis for this statement or support for same. (*See also* Plaintiff's Evidentiary Objections No. 5.) The May Declaration also makes the circular statement that CICP employees have no "executive responsibilities" and thus have a "substantial privacy interest." (*Id*. ¶ 20.) However, whether CICP employees have "executive responsibilities" is not dispositive regarding whether disclosure of their names serves the public interest. (*See* Plaintiff's Evidentiary Objections No. 6.) Overall, the May Declaration

parrots sound bites regarding the standard of withholding information under Exemption 6 but provides no substance to justify the self-serving statements. *See Pinson v. DOJ*, 160 F. Supp. 3d 285, 300 (D.D.C. 2016) (finding that the agency failed to identify any privacy interest at stake other than general assertions that parrots Exemption 6's requirements and fails to satisfy the agency's burden); *Inst. for Energy Rsch. v. FERC*, No. 22-cv-3414, 2024 U.S. Dist. LEXIS 43910, at *31 (D.D.C. Mar. 13, 2024) (same).

Finally, there are other deficiencies in the Declarations: they fail to establish personal knowledge or best evidence, fail to provide the dates that law enforcement or investigative agencies were contacted or when reports were filed; contain inadmissible hearsay regarding the statements of third parties; fail to provide the dates that CICP's "safeguards" were implemented, in the rare instance where the content of the communications is disclosed; and fail to describe how the communications, which appear to simply express rhetoric and displeasure with job performance, are "threatening" or "harassing" even though this fact is not self-evident. (*See e.g.*, Grimes Decl. Ex. A-E; *see also* Plaintiff's Evidentiary Objections.) Finally, the Declarations fail to indicate if the cited emails, calls, and/or texts were communicated by a single individual or more than one individual. Based on the email exhibits to the Grimes Declaration, it is possible—and in fact seems likely—that many of the unwanted communications were from a single individual and were resolved when law enforcement was notified.[5] At any rate, the Defendants bear the burden of demonstrating that Exemption 6 applies, and their Declarations generate more questions than answers.

---

[5] ICAN also notes that Grimes' inadmissible hearsay statement that "local authorities were considering charging the requester with a crime" fails to indicate if the criminal charges are in any way related to the requestor's communications to CICP employees or whether charges were ever filed at all which means the accusations may have been unfounded. (*See* Grimes Decl., at 7 ¶ 23.)

What Defendants' Declarations **fail** to state is more informative than what they do state. Defendants have not demonstrated that federal employees have a privacy interest in their identity as employees of CICP or that disclosing their names would amount to more than a *de minimis* privacy interest. Therefore, Defendants' withholding of CICP employees' names was an improper application of Exemption 6. "FOIA's strong presumption in favor of disclosure is at its zenith in this Exemption 6 analysis." *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (internal citations and quotation marks omitted); *see also Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004) (noting the phrase "clearly unwarranted" in Exemption 6 creates a higher bar for withholding responsive material than Exemption 7).

## III.   THE PUBLIC'S INTEREST IN THE NAMES OF CICP EMPLOYEES IS SIGNIFICANT

If this Court determines that CICP employees have a substantial privacy interest in complete anonymity, the next step is for it to evaluate the public interest in disclosure, which "depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law." *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 17 (D.D.C. 2000). Accordingly, to assess the public interest, the Court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *People for the Am. Way Found. v. Natl. Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Therefore, to properly make a determination regarding the public interest in disclosure, it is critical for the Court to understand the status of CICP claims and the claims process. (*See also* Decl. of Allison R. Lucas.)

A.       **Status of CICP Claims**

On January 31, 2020, the former HHS Secretary, Alex M. Azar II, declared a public health emergency for the entire United States in response to the COVID-19 outbreak. The January 2020 declaration and subsequent renewals provided protections to, among others, manufacturers and distributors of COVID-19 vaccines (countermeasures). *See* "Covered Countermeasures" section of a Medical Countermeasures against COVID-19 declaration and its subsequent amendments *available at* https://aspr.hhs.gov/legal/PREPact/Pages/default.aspx; *see also* Decl. of Allison R. Lucas.

As of July 1, 2024, 13,309 CICP claims related to COVID-19 countermeasures had been filed, and 10,402 were still pending review. *See Countermeasure Injury Compensation Program (CICP) Data*, HRSA (Aug. 5, 2024), https://www.hrsa.gov/cicp/cicp-data (last reviewed July 2024). To date, CICP has compensated only 13 of those claims. *Id*. The average payout on COVID-19 vaccine injury claims to date is $3,743.18. By comparison, CICP's average payout on injuries related to the H1N1 vaccine was $198,450.12. *Id*. Over 78% (10,402/13,309) of the COVID-19 countermeasure claims remain "pending review or in review." *Id*. In rare instances where a decision has been reached, 98% of those COVID-19 countermeasure claims have been denied (2,855/2,907). *Id*. CICP has awarded compensation to a lamentable 0.09% of total COVID-19 claimants (13/13,309). *Id.*; *see also* Decl. of Allison R. Lucas.

In Fiscal Year 2023, CICP spent $13.15 million on administrative expenses and $0 on claims, (https://www.usaspending.gov/federal_account/075-0343), so it is no surprise that CICP employees toss out more claims than they adjudicate. For example, only 375 of the 13,309 filed claims have been dismissed for not meeting the standard of proof and/or a covered injury was not sustained, so these are the only **substantive** decisions to date. *See Countermeasure Injury*

*Compensation Program (CICP) Data*, HRSA, https://www.hrsa.gov/cicp/cicp-data (last reviewed July 2024). All other claims were denied by CICP employees for not meeting technical requirements. *Id*; *see also* Decl. of Allison R. Lucas.

**B.    CICP Process**

CICP's process is shrouded in secrecy. What little that is publicly known about the program is available on HRSA's website, (https://www.hrsa.gov/cicp), which describes the process as follows:



Beyond this high-level information provided online by the government, there are very few details concerning the CICP process available to the public. Claimants have no opportunity for discovery nor any method to request or review the documents CICP employees rely upon to reach their determination. CICP employees review claims according to unknown, undefined standards. The government identifies no rubric, manual, or set of guidelines or standards that is used to decide requests. (*See* Decl. of Allison R. Lucas.) Instead, the government states that "[t]o establish a covered injury, the CICP must determine that the injury sustained was the direct result of the administration or use of a covered countermeasure. Under the Public Readiness and Emergency Preparedness Act ("**PREP Act**"), the CICP may only make such determinations based on compelling, reliable, valid, medical, and scientific evidence." Criteria to Demonstrate that a

Covered Injury Occurred, HRSA, https://www.hrsa.gov/cicp/criteria-demonstrate-covered-injury-occurred (last reviewed Sept. 2023). This standard is determined by individuals that Defendants refused to identify and is based on unidentified information and evidence. Furthermore, Defendants do not identify any expert witnesses or consultants used in making determinations. If the government relies on such experts or consultants, it does not produce their written reports or materials or allow claimants the opportunity to question or cross-examine the experts. If the government does not rely upon experts, that presents other obvious concerns regarding the CICP process. *(See* Decl. of Allison R. Lucas.)

If denied benefits, a claimant may request reconsideration from HHS within 60 days. *Frequently Asked Questions*, HRSA, https://www.hrsa.gov/cicp/faq (See the question "What if the CICP determines that I am not eligible for benefits?"). The same issues detailed above pertain to this "appeals" process. In summary, nothing is disclosed about the inner workings of CICP, and CICP employees appear to have complete discretion in their evaluations with little or no oversight or transparency.

Critically, because Defendants refuse to disclose the names of CICP employees, claimants have no way to confirm whether they are qualified or have any conflicts of interest, including whether any of them have ever reviewed, promoted, profited from, or mandated the COVID-19 vaccine. Knowing this information is critical to ensure a fair evaluation of claims because individuals harmed by a covered countermeasure like the COVID-19 vaccine cannot obtain judicial review of CICP determinations. *See* 42 U.S.C. § 247d-6e(d) (discussing exhaustion requirement and limited appeal rights). Thus, the public's interest in knowing the names of those evaluating CICP claims is significant. Because the names of CICP employees are not available through other sources, the public's interest in obtaining this information through FOIA is

significant. *See U.S. Dep't of Def., Dep't of Military Affairs v. Fed. Labor Relations Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992) ("The availability of information through other sources lessens the public interest in its release through FOIA"); *see also* May Decl. ¶ 19 (CICP employees' names are not "widely known").

### C.      Defendants Overstate the Broad Privacy Interests That They Assert

Defendants vastly overstate their asserted privacy interests in keeping the names of CICP employees anonymous. They rely on conduct that has little or no connection to CICP employees' roles as claim evaluators and rests on speculation regarding the communicator's intent. (*See* Plaintiff's Evidentiary Objections Nos. 16, 19, 21, 25.) Even if the Court finds the content of the Grimes and May declarations admissible, much of what they cast as "harassing" or "threatening" is relatively innocuous communication.[6] While admittedly distasteful, these statements fit squarely within the First Amendment's protection for rhetoric. *See Watts v. United States*, 394 U.S. 705, 706 (1969) (holding that, at a public rally against the Vietnam War, it was protected hyperbole to state, "If they ever make me carry a rifle, the first man I want to get in my sights is L.B.J."); *NAACP v. Claiborne Hardware*, 458 U.S. 886, 902 (1982) (holding that. in course of a boycott, telling a large gathering "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck" was protected hyperbole). While the communication may have been rude and mildly upsetting, these types of remarks are commonplace on any variety of issues in which people have disparate and passionate opinions and they are in no way unique to CICP employees. If rude comments could cut off the right to public information about taxpayer-funded government

---

[6] Defendants argue that because what CICP does might be considered controversial by some, the names should be exempt from disclosure. (May Decl. ¶ 18.) However, Article III judges inarguably deal with much more controversial issues, people, and situations, and nonetheless, we do not cloak their identities from the public.

activity, the government could prevail on the Exemption 6 balancing test in virtually every case. Indeed, these generalized, rhetorical comments are a far cry from the types of serious threats of bodily harm found sufficient to justify withholding individuals' identities in other Exemption 6 litigation. *See, e.g.*, *Judicial Watch, Inc. v. FDA*, 407 F. Supp. 2d 70, 77 (D.D.C.2005) , *aff'd in part, remanded in part*, 449 F.3d 141 (D.C. Cir. 2006) (approving the withholding of names of FDA employees under Exemption 6 where those employees were involved in the agency's approval of mifepristone, an abortion-inducing drug, and the FDA provided "evidence of abortion clinic bombings" and described "websites that encourage readers to look for mifepristone's manufacturing locations and then kill or kidnap employees once found"); *Hudson v. Dep't of Army*, No. CIV.A. 86-1114, 1987 WL 46755, at *2-3 (D.D.C. Jan. 29, 1987), *aff'd*, 926 F.2d 1215 (D.C. Cir. 1991) (permitting withholding under Exemption 6 the "name, rank, and unit of overseas military personnel" where the government documented "past as well as recent terrorist activity" targeting such personnel, "including increased intelligence gathering by terrorists of information similar to that requested here" and noting that the "information could be used by terrorists and their supporters in targeting servicemen and women, locating sensitive units, car bombing attacks, and general harassment of United States military personnel").

Furthermore, Defendants' assertion that only the Director of DICP has authority regarding eligibility and benefits determination is unavailing. (*See, e.g.*, Grimes Decl. ¶ 4.) First, Defendants provide no authority for this assertion. Second, Defendants provide no information on the level of review Grimes gives to each claim or whether the "lower-level" employees' determination is rubber-stamped by the Director. (*See* Plaintiff's Evidentiary Objections No. 5.) Indeed, it seems infeasible that Grimes has personally reviewed and evaluated the determinations for the 3,450 decisions made to date or will personally evaluate the 10,414 pending. Furthermore, the

qualifications and concern for potential conflicts of interest of CICP employees are valid given their vital role in the evaluation claims, as described by Grimes in his February 16, 2024, Congressional testimony:

> the CICP conducts medical reviews of each CICP claim to determine if it meets the statutory standard. This detailed review includes an iterative process of obtaining and reviewing comprehensive medical documentation from CICP requesters, as well as closely reviewing and monitoring the medical literature. For compensable claims, the CICP must also collect detailed financial information, given that the program by statute can provide compensation only after other third-party payers.

https://www.congress.gov/event/118th-congress/house-event/LC72556/text.

If anything, Defendants' argument undercuts its position. If Grimes alone is responsible for making determinations, deciding benefit amounts, and signing documentation regarding same, then none of the "lower-level" CICP employees are at risk of harm or harassment because they hold no decision-making authority and no claimant will know which CICP employee reviewed his or her claim. (*See* Grimes Decl. ¶¶ 4, 10.)

Next, the cases cited by Defendants regarding the public interest analysis are not factually relevant to the issues presented to this court and thus are not persuasive. For example, in *Judicial Watch*, *Inc. v. FDA*, 449 F.3d 141 (2206), the agency's supporting affidavits were sufficient and detailed evidence of abortion clinic bombings and websites that encouraged the murder and kidnapping of employees whose names were subject to disclosure. *Id.* at 153. There, the public interest in disclosure was "not immediately apparent" and was a "non sequitur," leading the court to conclude that "in the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales." *Id*. at 153. Here, the public interest is significant because disclosure will shed light on whether the government is lawfully administrating its benefits program, allow the public to monitor whether the government is fulfilling its statutory duty,

illuminate how the government is using taxpayer money, and reveal if federal CICP employees are qualified and/or have conflicts of interest. This significant public interest was completely ignored by Defendants, which is telling since they have the burden to justify the withholding.

Defendants' feeble argument regarding the lack of public interest implicated here is woefully illuminated by their citation to *Ctr. For Med. Progress v. Dep't of Health & Hum. Servs.*, 685 F. Supp. 3d. 8 (D.D.C. 2023), a case that was **<u>vacated</u>** and remanded by the appellate court on request of the government because its declaration, on which the trial court relied to find that releasing the names of the individuals would subject them to a real risk of threats, harassment, and violence, contained "inaccuracies." *See Ctr. For Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 23-5224, 2024 WL 226234 (D.C. Cir. May 15, 2024). At any rate, in reaching this conclusion, the court relied on declarations claiming that researchers involved with fetal tissue research were subjected to "ongoing, unrelenting harassment," had received "threats of violence to their person," and had evidence of "violence (including murders) committed against medical staff who work with fetal tissue." *Ctr. For Med. Progress*, 685 F. Supp. 3d. at 18 (citing to *Ctr. for Med. Progress II*, 2022 U.S. Dist. LEXIS 233889, at *2). Here, Defendants' declarations regarding threats and harassment of CICP employees are insufficient, and even if they were, the vague and nondescript communications and rhetoric allegedly received by CICP employees do not rise to the level of threats of physical harm and actual physical harm the court found in *Ctr. For Med. Progress*, which it then determined outweighed a "non-apparent" public interest.

On the other hand, there are a multitude of cases on point favoring ICAN's position. For example, in *Tokar v. Department of Justice*, 304 F. Supp. 3d 81, 101-02 (D.D.C. 2018), the court held that the names of individuals who were nominated but not selected for federal employment are a public interest that has been squarely recognized by the Circuit because a list of names of

soon-to-be government officials can tell the public something about how the government might operate in the future. Here, ICAN requests the names of **current** federal CICP employees responsible for reviewing CICP claims and determining whether they are entitled to compensation. Critically, because HHS provided the COVID-19 vaccines and other countermeasures protection of the PREP Act, CICP is **the only avenue** of relief for COVID-19 vaccine-injured citizens, intensifying public interest in the workings of this federal taxpayer program.

In *Multi AG Media LLC v. Dept. of Agric.*, 515 F.3d 1224 (2008), an agency withheld files requested under the FOIA, and the DC Circuit Court of Appeals found that the district court's reliance on Exemption 6 was improper, reversed its grant of summary judgment, and remanded. There, the court found the information sought was covered by Exemption 6 and that there was a greater than *de minimis* privacy interest in the requested information. *Id*. at 1230. However, the court then found that the district court focused too narrowly and missed the significant public interest in disclosure because disclosure permitted "the public [to] monitor whether the agency [wa]s correctly doing its job," (*id*. at 1231), determine whether the government is "lawfully administering its … benefit programs," (*id*. at 1232), and would "enable the public to more easily monitor whether the agency is carrying out its statutory duty." *Id*. The court then weighed the public interest against the "greater than *de minimis* privacy interest" and held:

> We are mindful that Congress enacted FOIA to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny. FOIA is intended to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed. As the Supreme Court has explained, the purpose and plain language of the Act mandate a strong presumption in favor of disclosure.

*Id*. (cleaned up and citations omitted). The court further held that "there is a special need for public scrutiny of agency action that distributes extensive amounts of public funds . . . ." (*id*.), the release

of the files would not "constitute a clearly unwarranted invasion of personal privacy," and that the agency's reliance on Exemption 6 in withholding information from the files was improper. *Id*. at 1233.

Other courts have found a significant public interest in how the government is stewarding taxpayer money. *See e.g.*, *Brock v. Pierce County*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen."); *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1192 (11th Cir. 2007) ("easily" concluding that there is a substantial public interest under FOIA Exemption 6 in "learning whether FEMA is a good steward of (sometimes several billions of) taxpayer dollars in the wake of natural and other disasters"); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) ("[T]here is an obvious legitimate public interest in how taxpayers' money is being spent, particularly when the amount is large."). Millions of taxpayer dollars are at issue here because in Fiscal year 2024, CICP requested $15 million. https://oversight.house.gov/wp-content/uploads/2024/02/HRSA_SSCP-Testimony-for-02.15.2024-Hearing.pdf.

Furthermore, the public has a "strong interest in disclosure of [] conflicts of interest." *Washington Post Co. v. United States Dept. of Health & Human Servs.*, 223 U.S. App. DC 139 , 264 (1982). The U.S. government helped develop, distribute, authorize, approve, recommend, and mandate the COVID-19 vaccine and is now responsible for deciding claims of COVID-19 vaccine injury in CICP, which is the only remedy available to those injured by the COVID-19 vaccine. In fact, HHS has a "strong partnership" with COVID-19 vaccine manufacturers, "collaborated" with them regarding the development and distribution of COVID-19 vaccines, and continues to "build [their] relationship." https://www.hhs.gov/about/news/2023/07/13/letter-covid-19-vaccine-manufacturers.html. HHS's relationship with COVID-19 vaccine manufacturers is an inherent

conflict regarding its evaluation of CICP claims. In *Washington Post*, the court found that the possibility of conflicts within HHS was "more than mere speculation" because its own in-house review demonstrated that conflicts of interest were a potential problem, and recent allegations and investigations evidenced conflicts between HHS consultants who perform services both for the Department and for private entities in related areas. *Washington Post Co.*, 223 U.S. App. DC 139 at 264. The court found that the purpose of FOIA is to "permit the public to decide *for itself* whether government action is proper. Congress was all too aware of the innumerable times that agencies had withheld information under prior law only to cover up embarrassing mistakes or irregularities . . . . FOIA was designed to prevent such incidents and establish instead the right of the individual to be able to find out how his government is operating . . . . In light of that purpose, the public interest in disclosure is not diminished by the possibility or even the probability that HHS is doing its reviewing job right." *Id*.

There are other instances where access to information about bias or conflicts of interest has been found to be a weighty interest. *See, e.g.*, *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183 (D.D.C. 2011) (referring to "legitimate public interest in ferreting out undue influence on the government by outside groups"); *cf. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985) ("[P]reventing corruption or the appearance of corruption are . . . legitimate and compelling government interests . . . ."). Here, HHS admits close relations with COVID-19 vaccine manufactures and CICP has been scrutinized by Congress and additionally has been the subject of media attention and litigation.[7] As Defendants admit, "There can be no dispute that there has been

---

[7] *See e.g.*, A80C5322-F694-4803-BC15-BE3B0D4708D1 (senate.gov); https://www.congress.gov/event/118th-congress/house-event/LC72556/text; https://pubmed.ncbi.nlm.nih.gov/35382431/;

much discussion and differing opinions about COVID-19 vaccines as well as the related compensation program." (Dkt. 16-1 at 8-9.) ICAN's request for information, which can disclose CICP employees' potential conflicts of interest, would shed direct light on the financial interests of CICP employees that may influence their work.

Finally, Defendants repeatedly claim that CICP is a "controversial" program, (Dkt. 16-1 at 8, 15), CICP employees are involved in "or connected to controversial government decisions," (*id.* at 17), and "controversial work." (May Decl., Dkt. ¶ 18.) As noted above, Defendants allege that there are differing opinions about COVID-19 vaccines CICP. However, Defendants fail to fully develop these arguments because they attempt to persuade the Court that CICP employees are akin to fetal tissue and abortion pill researchers and that the issue is "controversial" enough to withhold CICP employee's names without overtly admitting that the public interest in CICP is significant. These bald assertions belie Defendants' argument that the "low-level" CICP employees' roles are too insignificant to reveal anything about the CICP. Defendants have made the untenable and mutually exclusive arguments that CICP employees are directly involved in "controversial government decisions" (such that their names should be withheld) and also that they have no decision-making influence over CICP claims (such that disclosure of their names is not in the public interest). Thus, Defendants ask the Court to hold: "heads," Defendants win, "tails," ICAN loses. To defeat an Exemption 6 assertion, ICAN must show public interest in the CICP employee's names. Without the public taking interest in CICP, even the slightest privacy assertion results in the agency prevailing. However, according to Defendants, if the public takes too much interest and outraged people express their interest through heated rhetoric, then Defendants still

---

*Smith v HRSA. et al.*, no. 23-01425 (W.D. La. filed Oct. 10, 2023); and *Smith v HRSA. et al.*, no. 24-00334 (N.D. Tex. Filed April 18, 2024).

win because the rhetoric resulting from the public interest amplifies the privacy interest to defeat the public interest. Few issues, if any, would ever make it past such an absurd test.

Based on the foregoing, the only possible conclusion is that the public interest in the disclosure of CICP employees is significant.

**D.      The Public's Interest in the Names of CICP Employees Far Outweighs Any Possible Privacy Interest**

When the public and private interests are properly balanced, the names of CICP employees should be disclosed. As explained, CICP employees' privacy interests are not substantial. The general rule is that government employees do not have a substantial privacy interest in their names, disaggregated from other identifying information like addresses or phone numbers. *Aguirre*, 551 F. Supp. 2d at 54; *Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 257; *Gordon*, 390 F. Supp. 2d at 902. The D.C. Circuit has explained that Exemption 6 can sweep in "bits of personal information, such as names," (*Judicial Watch*, 449 F.3d at 152); however, the mere fact that an agency file or record contains personal, identifying information is not enough to invoke Exemption 6 because the information must also be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Jud. Watch, Inc. v. United States Dept. of State*, 282 F. Supp. 3d 36, (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32, (D.C. Cir. 2002) ("*Norton*").

Even if Defendants established a "substantial" privacy interest in protecting the identities of the principal investigators, "it only moves [the inquiry] along to the point where we can 'address the question whether the public interest in disclosure outweighs the individual privacy concerns.'" *See Multi Ag Media*, 515 F.3d at 1229-30 (quoting *Norton*, 309 F.3d at 35). "The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding

of the operations or activities of the government." *Norton*, 309 F.3d at 33-34 (cleaned up). "Exemption 6's requirement that disclosure be clearly unwarranted instructs us to tilt the balance (of disclosure interests against privacy interest) in favor of disclosure." *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007 ) (quoting *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D. C. Cir. 1982). *See also Gilman v. United States Dept. of Homeland Sec.*, 32 F. Supp. 3d 1, 10 (D.D.C. 2014). "In undertaking this analysis, the [C]ourt is guided by the instruction that, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." *Norton*, 309 F.3d at 32 (internal quotation marks omitted).

The public interest here is strong. The government pushed this issue into the spotlight by mandating the COVID-19 vaccine for its employees, urging it for the American public, and eliminating any other remedy available to those injured by the vaccine. Disclosure of the names of employees of the taxpayer-funded CICP would inform this ongoing public policy discussion by shedding light on the workings and effectiveness of the only remedy available to U.S. citizens who have been injured by the COVID-19 vaccine.

Moreover, public interest in disclosure weighs particularly heavily here because ICAN seeks information about the propriety of government-funded activities occurring at governmental institutions by individuals associated with those taxpayer-supported activities—in contrast to situations in which personal information about private citizens is included by happenstance in government files because of conduct unrelated to the FOIA request about the agency's performance of a public act. *See, e.g.*, *Electronic Frontier Foundation v. Office of the Director of Nat'l Intelligence*, 639 F.3d 876, 888 (9th Cir. 2010) (holding the district court correctly found "that lobbyists' privacy interests in the nature of their employment, should not counterbalance the public's strong interest" and noting that "this is not a situation where he is a third-party who finds

himself in government records through no action of his own"). Here, the public interest in revealing the identities of CICP employees outweighs any purported privacy interest in their mere identities, does not constitute a clearly unwarranted invasion of personal privacy, and withholding their names is improper under Exemption 6.

The facts presented here are very similar to those in *White Coat Waste Project v. United States VA*, 443 F. Supp. 3d 176 (D.C.C. 2020). In that case, the plaintiff brought actions under FOIA against the Department of Veterans Affairs ("**VA**") regarding FOIA requests for information about the canine experiments, including the names of the principal investigators. The VA withheld the requested information under Exemption 6 based on the nature of the research, arguing that the researcher's names must be shielded from disclosure because of the substantial privacy interests at stake, specifically, "the release of these individuals' names, locations, or offices make them vulnerable to potential attack, harassment or threatening behavior, and the release of such personal details are inextricably linked to those individuals expectations of working in a safe environment." *Id*. at 191. The agency also cited a bomb threat, "thousands of telephone calls opposing canine research" and protests outside of the VA facility. *Id*. at 192. The court found that the public interest was significant because the experiments garnered media coverage, and lawmakers demanded accountability and transparency in government-funded research. *Id*. at 195. The Court held that the release of the names did not constitute a clearly unwanted invasion of privacy because information about the experiments and compliance with protocols and applicable federal regulations clearly fell under the ambit of information that "let[s] citizens know what their government is up to," (*id*. at 196 (citations omitted)), and disclosure of the names would "ensure that the public stay[s] informed about what their government is up to." (*Id*. (citation omitted)).

Likewise, in *Gilman v. United States Dept. of Homeland Sec.*, 32 F. Supp. 3d 1, 15 (D.D.C. 2014), the Honorable Beryl A. Howel noted that:

> [a] survey of [] cases shows that, on balance, when the disclosed information would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to, disclosure is appropriate, even if the Court has recognized a significant privacy interest. In other words, even when a significant privacy interest is at stake, Exemption 6 require[s] a balance tilted emphatically in favor of disclosure."

*Id*. at 32. (cleaned up and citations omitted). *See also News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir. 2007) ("The federal courts, including this one, have therefore generally concluded that an agency's burden under Exemption 6 of showing that disclosure would constitute a clearly unwarranted invasion of personal privacy is an onerous one." (citations omitted)). In *Gilman*, the court found that names and addresses withheld under Exemption 6 implicated more than *de minimis* privacy interest but that the withheld information, after appropriate analysis, could reveal the agency's decision-making and conduct as it related to the Texas-Mexico border wall planning and construction (a politically charged project); thus, it helped the public "learn something directly about the workings of the Government." *Gilman,* 32 F. Supp. 3d at 15 (internal quotation marks omitted). Judge Howel ruled, "Although the privacy interest in the requested information is not insubstantial, it does not outweigh the strong public interest in releasing the names and addresses." *Id*.

Another relevant case is the D.C. Circuit's decision in *ACLU v. United States DOJ*, 665 F.3d 1 (2011), wherein the court found a significant public interest in disclosure because it would shed light on government conduct. The court analyzed the facts using the broader Exemption 7, noting that the harm related to disclosure under Exemption 6 must be "clear" but only "reasonably expected" under Exemption 7. *Id.* at 6 (citations omitted). In *ACLU*, an advocacy organization

sought the disclosure of docket numbers and names of defendants who had been the targets of warrantless cell phone tracking. *Id.* at 12. The court held that disclosure fell within FOIA's scope because it advanced "the citizens' right to be informed about what their government is up to." *Id.* at 6. At the time, warrantless cell phone tracking was a topic of considerable public interest that had received media attention and had been a focus of inquiry in several congressional hearings. *Id.* at 13. The court opined that the disclosure sought by plaintiffs would inform the ongoing public policy discussion by shedding light on the scope and effectiveness of the policy. The court further found that disclosure could (1) aid plaintiffs and others in arguing for legislation to govern cell phone tracking, (2) shed some light on the efficacy of the technique, and (3) reveal the standards the government uses to justify the policy, and (4) inform the public discussion concerning the policy. *Id.* at 14. The court did not require that the plaintiff show that disclosure would show government wrongdoing because the plaintiffs were not only seeking to show that the government's policy was improper but also to illuminate the policy and its effectiveness. *Id.* Even under the more stringent Exemption 7 standard, the court held that this public interest outweighed the privacy interest of the information and ordered disclosure. *Id.* at 16. Here, similar to the policy at issue in *ACLU*, CICP has been subjected to public interest, including congressional hearings and litigation, and disclosure of CICP employees would inform the public about whether the employees are qualified or whether they have conflicts of interest and this transparency aids the public in arguing for legislation regarding CICP and providing oversight regarding the effectiveness and/or efficiency of CICP.

The Eleventh Circuit case of *News-Press v. United States Dept. of Homeland Sec.*, 489 F. 3d 1173, 1191-92 (11th Cir 2007) is also on point. There, evidence demonstrated that there may have been errors in disaster disbursements, and the plaintiffs used FOIA to request the addresses

where FEMA money was disbursed. The Court "easily conclude[d] that the asserted interest in learning whether FEMA is a good steward of (sometimes several billions of) taxpayer dollars in the wake of natural and other disasters is one which goes to the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Id.* at 1192 (citation omitted); *see also United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) ("[FOIA] focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." (internal quotation marks omitted)). The Eleventh Circuit noted that the district court gave inadequate weight to the "substantial light that would be shed on FEMA's activities directly from the release of the addresses." *Id.* at 1192. In fact, the court held that to uphold the agency's withholding, it would have to find that the "privacy interests against disclosure are greater than the public interest in disclosure," but stated, "This we cannot do. Quite simply, the disclosure of the addresses serves a powerful public interest, and the privacy interests extant cannot be said even to rival this public interest, let alone exceed it, so that disclosure would constitute a clearly unwarranted invasion of personal privacy." *Id*. at 1196 (emphasis in original). *See also Cochran v. United States*, 770 F.2d 949, 955 (11th Cir. 1985) ("If the balance is equal the court should tilt the balance in favor of disclosure.").

Finally, in *Am. Oversight v. United States GSA*, 311 F. Supp. 3d 327, 347 (D.D.C. 2018), the court found there was *de minimis* privacy in the names of non-governmental employees, but even if they "retained some measurable privacy interest in non-disclosure of their names in response to the plaintiff's FOIA request, the applicable legal standard requires an additional showing that [the agency] [could not] meet" because the roles of the individual names who were

redacted were carried out pursuant to a federal statute, the operation of which was clearly an appropriate focus of public interest and scrutiny. Here, likewise, CICP and its employees' roles are carried out pursuant to 42 U.S.C. § 247d-6e(a) and 42 C.F.R. § 110.10(a), the operation of which is an appropriate focus of public interest and scrutiny.

In performing the balancing test, the Court must keep in mind Congress's "dominant objective" to provide full disclosure of agency records. *Department of the Air Force v. Rose,* 425 U.S. 352, 361 (1976); *see also Baldrige v. Shapiro,* 455 U.S. 345, 352 (1982); S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). "In addition to Congress's general purpose to make disclosure the dominant practice and withholding the exception, Exemption 6's requirement that disclosure be clearly unwarranted requires this Court to tilt the balance [of disclosure interests against privacy interests] in favor of disclosure." *Washington Post Co. v. United States Dept. of Health & Human Servs.*, 690 F.2d at 261. As the Supreme Court stressed in *Rose*, 425 U.S. at 378 n.16, Congress's choice of the "clearly unwarranted" standard was a "considered and significant determination," made despite repeated objections by government witnesses to the heavy burden it creates. Thus, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act. *Id*.; *see also Am. Oversight v. United States GSA*, 311 F. Supp. 3d 327, 345 (D.D.C. 2018) ("[U]nless the invasion of privacy is clearly unwarranted, the public interest in disclosure must prevail." (quoting *United States Dep't of State v. Ray*, 502 U.S. 164, 177 (1991)); *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007 ("Exemption 6's requirement that disclosure be clearly unwarranted instructs us to tilt the balance (of disclosure interests against privacy interest) in favor of disclosure."

Because Defendants fail to establish that CICP employees have a significant privacy interest in their names alone, and because any such interest (if it existed) does not outweigh the

public interest, Defendants fail to meet their burden on summary judgment in relation to Exemption 6. Consequently, ICAN's cross-motion should be granted.

## CONCLUSION

A large majority of the total U.S. population received a COVID-19 vaccine, and those injured by the injection are forced by the U.S. Government to proceed through CICP with no option for judicial review or appeal and no remedy to file torts against vaccine manufacturers, vaccine administrators, or any other person or entity. The U.S. Government has limited the legal remedy for seeking redress for COVID-19 countermeasures injury, including death, to CICP. Defendants' position is that those who are forced through this taxpayer-funded process have no right to know the identity of the people evaluating their claims and benefits is incorrect. Disclosure of the names of CICP employees will directly reveal something about the government's workings, including whether conflicts of interest exist and if CICP employees are qualified. Having this information will clearly inform the public of the government's performance of its statutory duties.

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment, grant ICAN's cross-motion for summary judgment, and order Defendants to disclose the requested information.

Dated:    August 14, 2024                           SIRI & GLIMSTAD LLP

/s/ Allison R. Lucas
Allison R. Lucas, DC Bar No. MI0105
Elizabeth A. Brehm, DC Bar No. NY0532
**Siri & Glimstad LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (888) 747-4529
alucas@sirillp.com
ebrehm@sirillp.com

35