**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br>　　　　　　　Plaintiff, <br><br>　　v. <br><br> HEALTH RESOURCES & SERVICES ADMINISTRATION, *et al.*, <br><br>　　　　　　　Defendants. | Case No. 24-cv-549 (JMC) |

<u>**MEMORANDUM OPINION**</u>

An office within the Department of Health and Human Services is responsible for compensating individuals who are harmed by certain countermeasures deployed in response to public health emergencies—like, for instance, COVID-19 vaccines. An organization filed a Freedom of Information Act (FOIA) request seeking the names of every employee in that office. The Government released the names of the Director and Deputy Director but withheld the names of the 35 employees that worked underneath them. Because employees in the office have received harassing and threatening emails, voicemails, and text messages, the Government concluded that disclosure of the names "would constitute a clearly unwarranted invasion of" the employees' "personal privacy." 5 U.S.C. § 552(b)(6). It therefore applied FOIA's Exemption 6 to redact the names. The Government has adequately justified that decision, so the Court grants its motion for summary judgment and denies the organization's cross-motion.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

## I.      BACKGROUND

Under the Public Readiness and Emergency Preparedness Act, the Secretary of Health and Human Services can, in response to a "public health emergency," issue a declaration that affords providers of "covered countermeasures"—medical interventions meant to counter the emergency—immunity from lawsuits related to the use of those countermeasures. 42 U.S.C. § 247d-6d(a), (b), (i)(1), (i)(2). Because the Secretary's declaration "cuts off forms of relief that might otherwise have been available to people harmed by" countermeasures, Congress "also established a 'Covered Countermeasure Process Fund' to compensate for such harms." *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022); *see* 42 U.S.C. § 247d-6e(a).

In response to the COVID-19 pandemic, the Secretary issued a declaration under the Act. *See* ECF 16-4 ¶ 7. COVID-19 vaccines were among the countermeasures covered by the declaration, meaning that people claiming to have suffered "injuries directly caused by" the vaccines would need to submit claims for compensation from the fund. 42 U.S.C. § 247d-6e(a); *see* ECF 16-4 ¶ 7. Those claims would be adjudicated by the Countermeasures Injury Compensation Program, a component within the Department of Health and Human Services that has been tasked with running the fund. *See* ECF 16-4 ¶¶ 4, 6; ECF 21-2 ¶ 4.

Seeking information about that Program, Informed Consent Action Network submitted a Freedom of Information Act request to a Department of Health and Human Services' component in late 2023. *See* ECF 1-1 at 2 (request); ECF 18-3 at 1 (undisputed fact). Informed Consent asked for "[a]ll records sufficient to identify all agency personnel involved with the Countermeasures Injury Compensation Program." ECF 1-1 at 2. Two weeks later, the agency sent its "final response" to Informed Consent. ECF 1-3 at 2. The agency produced a single responsive record. *See id.*; ECF 18-3 at 2. That record was a 37-item numbered list. *See* ECF 16-5 at 2. The first two items

were the names of the Director and Deputy Director of the Program. *See id.*; ECF 16-3 ¶ 19. The remaining 35 items were the redacted "names of the thirty-five Program personnel below the Deputy Director level." ECF 16-3 ¶ 17.

The agency withheld those 35 names under FOIA's Exemption 6. *See* ECF 16-3 ¶ 14. That exemption applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As the agency saw it, there was a "clear threat of harassment, invasions of personal privacy, and potential harm for employees who are associated with the Program." ECF 16-3 ¶ 24. On the other hand, the agency reasoned, "the release of the names would not shed any significant light on how the Program is run." *Id.* The agency therefore concluded that Exemption 6 applies to the redacted names. *See id.*

After filing an administrative appeal, Informed Consent came to this Court. *See* ECF 1-5; ECF 1. In a two-count complaint, the organization challenged the agency's alleged failure to timely act on the administrative appeal and its conclusion that the redacted 35 names are covered by Exemption 6. *See* ECF 1 ¶¶ 13–20. Eventually, both sides filed competing motions for summary judgment. *See* ECF 14; ECF 18. The only issue presented by the motions is whether the agency has justified its withholding of the names under Exemption 6. *See* ECF 16-1 at 8; ECF 18-1 at 10.

## II.    LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). An "agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

### III.    ANALYSIS

To determine whether the Government has justified withholding the names under Exemption 6, the Court's analysis proceeds in three steps. First, the Court "determine[s] whether the records are personnel, medical, or similar files covered by Exemption 6." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.* (*AILA*), 830 F.3d 667, 673 (D.C. Cir. 2016). If yes, the Court next asks whether disclosure "would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Id.* at 674. If the answer to that question is yes too, the final step is to "weigh the privacy interest at stake against the public interest in the release of the records." *Id.* After walking through each step here, the Court concludes that the Government has adequately demonstrated that "the invasion of privacy is clearly unwarranted." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 713 (D.C. Cir. 2025). The Government is therefore entitled to summary judgment.

### A.    The redacted names are "similar files" covered by Exemption 6.

Exemption 6 applies to "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6). "'[S]imilar files' . . . include detailed Government records on an individual which can be identified as applying to that individual." *Hum. Rts. Def. Ctr.*, 126 F.4th at 713. The exemption applies not only to "entire files" but also "may call for redaction of bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." *Id.* Applying this understanding of 'similar files,' the Circuit has squarely held that names—like those redacted here—are "bits of personal information" that "fall within the scope of exemption 6." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 n.6 (D.C. Cir. 2015); *see also Jud. Watch,*

4

*Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (holding "names of agency personnel" are covered by Exemption 6).

Informed Consent protests that these names are not "similar files" and therefore not "subject to Exemption 6." ECF 18-1 at 14–15. In doing so, it conflates the later, "balanc[ing]" stage of the inquiry with the first stage of "determin[ing] whether the records are personnel, medical, or similar files covered by Exemption 6." *AILA*, 830 F.3d at 673. Informed Consent is right that Exemption 6 "does not categorically exempt the names of government employees." ECF 18-1 at 14. But that is not because those names are not "similar files." It is because "the privacy interest at stake may vary depending on the context in which it is asserted." *Jud. Watch, Inc.*, 449 F.3d at 153. The privacy interest is relevant to the second and third steps of the inquiry— determining whether "a substantial, as opposed to a *de minimis*, privacy interest" is at stake and "balanc[ing]" that interest "against the public interest in the release of the records." *AILA*, 830 F.3d at 673–74; *see, e.g.*, *Hum. Rts. Def. Ctr.*, 126 F.4th at 715 (names not properly withheld because agency failed to demonstrate "that disclosure . . . would compromise a substantial privacy interest"). And although Informed Consent has cited two district court decisions holding that names are not "similar files," ECF 18-1 at 16, that approach is irreconcilable with the D.C. Circuit's decisions holding names are "similar files" covered by Exemption 6. *See Calderon v. U.S. Dep't of Agric.*, 236 F. Supp. 3d 96, 119–20 (D.D.C. 2017) (holding that one of the district court decisions cited by Informed Consent is contrary to "Supreme Court and D.C. Circuit precedent"), *abrogated on other grounds by Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019). The redacted names therefore qualify as "similar files" that fall within the scope of Exemption 6.

**B. A substantial privacy interest is at stake.**

The next question is whether "disclosure would compromise a substantial" privacy interest. *AILA*, 830 F.3d at 674. "[T]he word substantial in this context means less than it might seem." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008), *superseded on other grounds by statute*, 7 U.S.C. § 8791(b)(2), *as recognized in Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 352 (D.C. Cir. 2022). "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. That said, it is not "categorically" true that disclosure of federal employees' names would compromise more than a "*de minimis*" interest. *Hum. Rts. Def. Ctr.*, 126 F.4th at 715. And "showing that a substantial invasion of privacy will occur if the . . . names are released requires reasonable specificity of detail" in the Government's evidentiary showing, "rather than merely conclusory statements." *Id.*

The Government has comfortably made that showing here. The compensation Program's Director submitted a declaration detailing examples of "harassing" emails and voicemails that staff have received in the last several years. ECF 16-4 ¶¶ 11–12; ECF 21-2 ¶ 7. The Director, for instance, received emails comparing him to Hitler, calling him a "coward" and warning him that "God is watching," and referring to "explicit sexual acts." ECF 16-4 ¶ 14. He also explained that his wife has received "similar harassing messages on her personal cell phone" regarding his "professional role." *Id.* ¶ 15. He received messages on his personal cell phone, as well. *See id.* ¶ 13; ECF 21-2 ¶ 8. Other staff members have also been harassed. One "received an email with 'Hahahaha' in the subject line and an attached picture" of that staff member "and their spouse together at a private function." ECF 16-4 ¶ 18. Another staff member was sent "a screenshot of an article written about a school shooting" at a school that staff member had attended. *Id.* ¶ 20. Because of concerns about these communications, the agency notified Federal Protective Services about the "threats and harassment against" the Program's staff. *Id.* ¶ 21. "[O]n at least two

6

occasions, law enforcement officials arranged visits to" an individual who had submitted a claim for compensation with the Program "to ensure that the harassment and threatening nature of the[] communications ceased." *Id.* ¶ 23. This "detailed evidence" establishes that release of the names "raises threats more palpable than mere possibilities." *Hum. Rts. Def. Ctr.*, 126 F.4th at 716.

Indeed, the evidentiary showing here is in some ways even stronger than that in other cases where the Circuit has held withholding of names was justified. In *Judicial Watch v. FDA*, for instance, the agency put forward evidence about "a particularized danger to similarly situated people," but not "toward [the] staff" whose names were withheld "specifically," and the Circuit "held that Exemption 6" nonetheless "justified withholding the names." *Hum. Rts. Def. Ctr.*, 126 F.4th at 716 (describing *Jud. Watch, Inc.*, 449 F.3d at 153). Here, by contrast, the Government put forward evidence about threats and harassment directed towards the very employees whose names the agency withheld. *See* ECF 16-4 ¶¶ 16–20. The Government has therefore established that disclosure of the employees' names would compromise a substantial privacy interest.

Resisting that conclusion, Informed Consent protests that the Government's declarations are not "evidence that can properly be considered on a motion for summary judgment." ECF 18-1 at 17. The organization's arguments here run the gamut, including the declarants' supposed lack of personal knowledge, their failure to provide certain dates in their declarations, and their lack of specificity about the organization of the Program's office and the nature of the harassing communications. *See id.* at 17–23. These arguments are misplaced. The declarant who described the harassing and threatening messages largely did so on the basis of his personal knowledge: He received many of those communications. *See* ECF 16-4 ¶¶ 13–14. And to the extent he is describing messages other Program staff members received and then told him about, he did not "run[] afoul of Rule 56" by "relay[ing]" information he received from his "subordinates." *DiBacco*

7

*v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019). As for the alleged failure to provide dates, the same declarant included dates in his initial declaration, and both declarants further clarified the dates in supplemental declarations to resolve any would-be confusion. *See* ECF 16-4 at 11–31 (dates shown on emails attached to declaration); ECF 21-2 ¶¶ 7–8; ECF 21-3 ¶¶ 4–13.

And as the Court's discussion of the privacy interest at stake makes clear, there is ample detail in the Director's declaration about the nature of the harassment and threats. That declaration went well beyond "[g]eneralities" and "wholly conclusory" "assertions" "merely recit[ing] the elements of the analysis for whether Exemption 6 applies." *Hum. Rts. Def. Ctr.*, 126 F.4th at 715. Instead, it included examples of specific messages to "substantiat[e]" the Government's claims, along with descriptions of the incidents giving rise to the privacy concerns. *Id.*; *compare, e.g.*, ECF 16-4 ¶¶ 11, 13–14, 18, 20 (describing several instances of harassment), *with Inst. for Energy Rsch. v. FERC*, No. 22-cv-2114, 2023 WL 6121878, at *14–15 (D.D.C. Sept. 19, 2023) (holding that agency's "bald citation to several recent examples" involving officials in "an entirely different branch of government" was insufficient to establish privacy interest in withholding names of staff under Exemption 6). Aside from its failed objection to the admissibility of the Government's declaration, Informed Consent offers no reason to doubt that the Program's staff members received these harassing messages. The Government has therefore demonstrated that "a substantial invasion of privacy will occur if the [names] are released." *Hum. Rts. Def. Ctr.*, 126 F.4th at 713.

### C. Disclosure of the names would constitute a clearly unwarranted invasion of the employees' personal privacy interest.

Because the Government "has shown that a privacy interest is substantial," the Court turns to "balanc[ing] the [employees'] right of privacy against the public interest in disclosure." *Hum. Rts. Def. Ctr.*, 126 F.4th at 713. "Unless the invasion of privacy is clearly unwarranted, the public interest in disclosure must prevail." *Id.*

At the threshold, the Court clarifies the relevant public interest. Informed Consent spends quite a bit of its time discussing the agency's approval, or lack thereof, of "claims related to COVID-19 countermeasures," ECF 18-1 at 25, the claims approval process, *see id.* at 26, and the agency's expenditure of "taxpayer money," *id.* at 33. "The balancing inquiry," however, "focuses not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Hum. Rts. Def. Ctr.*, 126 F.4th at 713. Here, that means the relevant consideration is the public's interest in knowing the names of each of the Program's employees. But "[d]isclosing the identities" of the employees would "have minimal incremental value in shedding light on" how the Program is adjudicating claims for COVID-19 related injuries or spending taxpayer money. *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-3051, 2024 WL 3924563, at *3 (D.D.C. Aug. 23, 2024).

Informed Consent has identified a more specific public interest that is, at least theoretically, tethered to disclosure of the names. The organization claims that disclosure would "inform the public about whether the employees are qualified or whether they have conflicts of interest." ECF 18-1 at 40. Those are, no doubt, subjects about which there is a legitimate and weighty public interest. *See Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982) (discussing public's "strong interest" in "disclosure" of certain government consultants' "conflicts of interest"). But for two reasons, that interest is significantly weakened here.

First, Informed Consent "offers nothing but speculation"—alluding to the Department of Health and Human Service's collaboration with COVID-19 vaccine manufacturers, *see* ECF 18-1 at 33—"to suggest" that any of the employees are conflicted or unqualified. *Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1068 (D.C. Cir. 2023). "Mere speculation about hypothetical public benefits" of disclosure "cannot outweigh a demonstrably

significant invasion of privacy," as is threatened here. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991); *see also Perioperative Servs. & Logistics, LLC*, 57 F.4th at 1068 (discounting public interest where it rests on "nothing but speculation"); *Jud. Watch, Inc.*, 2024 WL 3924563, at \*4 (same). Even taking at face value Informed Consent's speculation about the Department's relationship with vaccine manufacturers, nothing about that relationship suggests anything at all about the specific employees whose identities the organization wants to disclose. Because there is no reason to think the employees have a conflict of interest or are unqualified, the public interest in disclosure for those purposes is weak at best.

Second, the "relevant question" is the "incremental value" of disclosure of the names to the asserted public interest. *Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1137 (D.C. Cir. 2024). That incremental value is lessened here given the universe of other information from which the public could assess whether the Program's administration is being affected by conflicts or unqualified employees. For one, the agency disclosed the names of the Director and the Deputy Director. The Director "review[s] each claim" and makes the ultimate determination of "whether a [claimant] has met the requirements to establish eligibility for compensation" and, if so, "the type and amount of compensation awarded." ECF 21-2 ¶ 5.[2] The public therefore can already decide for itself if the person with ultimate responsibility for the Program is conflicted or

---

[2] Informed Consent claims that there is a dispute about whether the Director does, in fact, make this ultimate determination. *See* ECF 18-3 at 4. But the Director twice averred, under penalty of perjury, that he was the "only" person in the office with "authority to make eligibility determinations." ECF 16-4 ¶ 10; ECF 21-2 ¶¶ 4–5. His affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Informed Consent, however, has done nothing more than baldly assert that "without discovery" it cannot "substantiate this claim." ECF 18-3 at 4. "[D]iscovery is rare in FOIA cases," and Informed Consent has not offered any evidence—an "affidavit or declaration," for instance— to suggest that the Director's declaration was filed in bad faith or to otherwise explain why it "cannot present facts essential to justify its opposition" to the Government's motion for summary judgment. *Cole v. Rochford*, 285 F. Supp. 3d 73, 76–78 (D.D.C. 2018); Fed. R. Civ. P. 56(d). There is, therefore, no genuine dispute about the Director's ultimate responsibility for approving claims.

unqualified. The public also might be able to assess the qualifications and conflicts of the lower-level staff without knowing their names. Reviewing their resumes, for instance, might reveal that same information. And as it happens, another FOIA requester has already sought those resumes. ECF 21-3 ¶ 13.[3] This other information—some of which, the Director and Deputy Director's names, is already public—sheds light on the same concerns the public would have in the employees' names. The incremental value of releasing the employees' names is therefore lessened.

Because the public interest in disclosure of the withheld employees' names is weak, at best, the employees' "private interest in avoiding harassment or violence tilts the scales." *Jud. Watch, Inc.*, 449 F.3d at 153. The Government has therefore justified redacting those names under Exemption 6. And for the same reason that the Government has demonstrated the employees' substantial privacy interest in withholding the names, it has likewise "established that disclosure of the employees' identities would result in a reasonably foreseeable harm to the privacy interests protected by Exemption 6." *Jud. Watch, Inc.*, 2024 WL 3924563, at *4. The "very context and purpose of the withheld material"—protecting the weighty privacy interest at stake—"makes the foreseeability of harm manifest." *Id.*; *see also Hum. Rts. Def. Ctr.*, 126 F.4th at 716–17 (describing the "substantive[] overlap" between the Exemption 6 privacy interest analysis and the "foreseeable-harm rule" for purposes of Exemption 6).

Two final notes before closing. First, because the harassment concern is equally applicable to each of the 35 staff members in the office, the "balancing analysis under Exemption 6 would yield a uniform answer across the entire" office. *AILA*, 830 F.3d at 675. There was therefore no need for the Government to make a "particularized showing for defined subgroups of [employees] or for individual" employees. *Id.* at 676. Second, the Court has an "obligation to consider the

---

[3] In acknowledging that request, the Court does not remark in any way on its propriety.

segregability issue *sua sponte*." *Rudometkin v. United States*, 140 F.4th 480, 495 (D.C. Cir. 2025). The Court is satisfied that the agency produced all reasonably segregable information. The only information redacted were the names themselves and, as the Government explained, production of any of that exempt information would have led to "reasonably foreseeable" harm. ECF 16-3 ¶ 31.

\* \* \*

The Government's motion for summary judgment, ECF 14, is **GRANTED**, and Informed Consent's motion for summary judgment, ECF 18, is **DENIED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 30, 2026